801 F.2d 883
 Patricia KOMPARE and Ralph Kompare, Plaintiffs-Appellants,
v.
Robert STEIN, M.D., Individually and as Medical Examiner of
Cook County; and Joann Richmond, M.D.,
Individually and as Deputy Medical
Examiner of Cook County,
Defendants-Appellees.
 No. 85-2628.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 18, 1986.
Decided Sept. 4, 1986.
 
 1
 Professor Roy D. Simon, Jr., Washington University School of Law, St. Louis, Mo., for plaintiffs-appellants.
 
 
 2
 Douglas J. Rathe, Asst. State's Atty., Chicago, Ill., for defendants-appellees.
 
 
 3
 Before CUMMINGS, Chief Judge, EASTERBROOK, Circuit Judge, and NOLAND, District Judge.*
 
 
 4
 NOLAND, District Judge.
 
 
 5
 This action under 42 U.S.C. Sec. 1983 is before the Court on appeal from the district court's grant of summary judgment in favor of the defendants. The plaintiffs attempted to impose liability on the defendants, two county medical examiners, for an autopsy that they performed which resulted in the prosecution of one plaintiff for voluntary manslaughter. The plaintiff was acquitted. The question on appeal is whether the defendants' qualified immunity protects them from suit, or more specifically, whether the defendants violated clearly established constitutional rights by allegedly violating a county ordinance requiring a thorough autopsy to be conducted or by allegedly causing the plaintiff to be prosecuted without probable cause. The district court held that the defendants were immune from suit, and we now affirm that holding.I.
 
 
 6
 Plaintiffs-appellants Patricia and Ralph Kompare ("the Kompares") brought this action under 42 U.S.C. Sec. 1983 against defendants-appellees Robert Stein, M.D., the Medical Examiner of Cook County, and Joann Richmond, M.D., a Deputy Medical Examiner, in their individual capacities, for damages arising from Richmond's autopsy of Jody Kompare, the plaintiffs' son. As a result of the autopsy, Patricia Kompare was indicted for the voluntary manslaughter of her son. Although the trial judge at the bench trial of her criminal case directed a verdict of not guilty, she lost her job and was hospitalized for psychiatric problems. Plaintiffs claim violations of their First, Fourth and Fourteenth Amendment rights. This matter is before the Court on appeal from the district court's grant of defendants' motion for summary judgment; therefore, the following facts, to the extent they are genuinely disputed, are taken in the light most favorable to the plaintiffs.
 
 
 7
 On September 11, 1982, five year-old Jody became ill, nauseous, disoriented and appeared to be in pain. Mrs. Kompare tried to drive Jody to the hospital, but he collapsed in the front yard before they reached her car. A neighbor gave Jody mouth-to-mouth resuscitation while Mrs. Kompare called an ambulance. The ambulance personnel gave Jody cardiopulmonary resuscitation and mouth-to-mouth resuscitation, and took him to the hospital, where he was pronounced dead.
 
 
 8
 Due to the unusual circumstances of Jody's death, his body was transferred to the Office of the Medical Examiner of Cook County, where Dr. Richmond performed an autopsy on Jody. She determined that Jody's death was the result of abdominal hemorrhaging caused by a torn small bowel mesentery. (The mesentery is the membrane which connects the small bowel to the abdominal wall and spine.) A normal mesentery can only be torn by a violent blow to the abdomen. When Richmond externally examined Jody, she noted twenty-two separate areas of injury, most of which were superficial bruises which occurred between one and twenty-four hours preceding Jody's death. None of the external injuries indicated trauma to the abdomen. Richmond's internal examination revealed a torn small bowel mesentery, hemorrhaging associated therewith, and a large area of hemorrhage beneath the scalp on the back of the head. Richmond had slides of the mesentery tissue prepared, but did not examine them until later. The injuries indicated that Jody was the victim of child abuse. Richmond stated in her postmortem examination report, dated two days after Jody's death, that Jody "died of bleeding into the abdominal cavity caused by a tear to the supporting tissues of the small bowel due to blunt trauma of the abdomen."
 
 
 9
 Mrs. Kompare was indicted for voluntary manslaughter on September 28, 1982 based on Richmond's report and Mrs. Kompare's admission to an investigating police officer that, on the morning of Jody's death, she struck Jody with her right arm to push him away from the kitchen table, which caused him to double over in pain. The indictment charged that Mrs. Kompare
 
 
 10
 killed Jody Kompare without lawful justification by striking him in the abdomen with her fist while under a sudden and intense passion resulting from serious provocation by Jody Kompare, in violation of Chapter 38, Section 9-2(a-1), of the Illinois Revised Statutes 1981, as amended.
 
 
 11
 On November 1, 1982, Richmond first looked at the mesentery tissue slides and noted that they were consistent with her earlier gross anatomical findings. In April of 1983, in response to a subpoena by Mrs. Kompare's defense attorney and in preparation for the upcoming trial, Richmond reviewed the slides and consulted with other pathologists. Richmond eventually concluded that Jody's mesentery was abnormal. On June 8, 1983, approximately two weeks before Mrs. Kompare's criminal trial, Richmond updated her report to include a diagnosis of fibromatosis of the small bowel mesentery. According to Richmond's testimony at Mrs. Kompare's criminal trial, a normal child's mesentery is very thin, delicate and translucent; while Jody's mesentery was thickened and rubber-like in consistency, and contained a great number of small blood vessels. Fibromatosis causes the mesentery to tear and bleed more easily than a normal mesentery. This explained the absence of any signs of external trauma to Jody's abdomen. Richmond testified at the criminal trial that her opinion of the cause of death did not change after her diagnosis of fibromatosis. Mrs. Kompare was found not guilty.
 
 
 12
 The Kompares filed this Sec. 1983 action in September of 1984. The defendants filed a motion for summary judgment on the grounds that they were protected by qualified immunity, which the district court granted. This matter is now before the Court upon the plaintiffs' appeal of the grant of summary judgment and dismissal of their cause of action. The grant of summary judgment in this case is a final decision; therefore, this Court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 13
 The plaintiffs dispute several of the statements in the preceding description of the factual background of this case. We are aware of our duty to view the facts in the light most favorable to the non-movant, but only genuine issues of material fact can defeat a motion for summary judgment. Mere allegations are insufficient to raise a genuine issue. The Kompares argue for an exception to this rule because the district court limited discovery on the grounds that qualified immunity protects government officials from suit (including discovery), as well as from the payment of monetary damages. The district court's limitation of discovery was proper, particularly because the Kompares had the opportunity to explore the facts in the previous criminal proceedings.
 
 
 14
 The district court held that undisputed evidence established probable cause to believe that Patricia had committed voluntary manslaughter; therefore, plaintiffs did not suffer any constitutional deprivation nor did Richmond violate clearly established rights. Alternatively, the district court granted summary judgment for Stein because plaintiffs did not allege that he had any involvement in the autopsy.[1] We hold that the Kompares have failed to raise a genuine issue of material fact and that the defendants are entitled to judgment as a matter of law; and, therefore, affirm the district court's grant of summary judgment for the reasons stated herein.
 
 II.
 
 15
 The defendant[2] claims that she is entitled to qualified immunity, an affirmative defense on which she carries the burden of proof. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d 396; Davis v. Scherer, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3020 n. 12, 82 L.Ed.2d 139 (1984) (applying Harlow standard to state officials in Sec. 1983 actions). Qualified immunity is "the best attainable accommodation of competing values." Harlow, 457 U.S. at 814, 102 S.Ct. at 2736. In situations of abuse of office, it is not a complete bar to "an action for damages[, which] may offer the only realistic avenue for vindication of constitutional guarantees," id., as is absolute immunity.[3] On the other hand, it protects the country from the danger "that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties' " Id., quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir.1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).
 
 
 16
 Qualified immunity is available to government officials performing discretionary functions. Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978); Benson v. Allphin, 786 F.2d 268, 277 (7th Cir.1986). Police officers have traditionally been granted qualified immunity in cases challenging police conduct relating to arrest. Scheuer v. Rhodes, 416 U.S. 232, 244-45, 94 S.Ct. 1683, 1690-91, 40 L.Ed.2d 90 (1974); Pierson v. Ray, 386 U.S. 547, 555-58, 87 S.Ct. 1213, 1218-19, 18 L.Ed.2d 288 (1967). The medical examiner's function in performing an autopsy is analogous to that of a police officer investigating a suspected homicide. Therefore, coroners enjoy the same qualified immunity as police officers or other investigators for the state prosecutor. Lawyer v. Kernodle, 721 F.2d 632, 636 (8th Cir.1983).
 
 
 17
 The plaintiffs do not dispute the abstract proposition that coroners are entitled to qualified immunity in the performance of their official functions. Rather, the plaintiffs and defendant disagree as to whether the defendant has met her burden of proof that she did not violate clearly established constitutional rights. Since Harlow, the standard the defendant must meet is an objective, rather than subjective, one. It is irrelevant whether a particular defendant knew at the time she acted (or failed to act) that her actions violated someone's constitutional rights. Bates v. Jean, 745 F.2d 1146, 1151 (7th Cir.1984). The question is whether the state of the law was such that a reasonable person would have known her actions were unconstitutional. Furthermore, a reasonable person is not expected to act as a legal scholar and predict the future direction of the law. Closely analogous cases, decided before the defendant acted or failed to act, are often required to find that a constitutional or statutory right is clearly established. Lojuk v. Johnson, 770 F.2d 619, 628 (7th Cir.1985), cert. denied, --- U.S. ---, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986).
 
 III.
 
 18
 The question to be answered is whether the defendant is entitled to qualified immunity in this case, which depends on whether the plaintiffs are claiming violations of clearly established federal constitutional rights.[4] Although the Kompares filed an amended complaint in response to the district court's order to specify more precisely the constitutional deprivations they claim to have suffered, it is still difficult to discern what constitutional rights are involved. The district court held that the only cognizable claim stated by the Kompares was for prosecution without probable cause and that their other claims are components of this main claim. We agree with the district court on this matter, but find it analytically helpful to separate and discuss one component of their claim before discussing prosecution without probable cause. Therefore, the following analysis first explains why the Kompares' clearly established rights were not violated by Richmond's alleged failure to conduct an investigation sufficient to establish the manner and cause of Jody's death, as required by county ordinance, and then explains why the Kompares' claim for prosecution without probable cause fails to show that any clearly established rights have been violated.
 
 A.
 
 19
 The plaintiffs have asserted a cause of action under Sec. 1983 on the basis of the defendant's alleged violation of a county ordinance, Cook County, Illinois, Ordinance 5-128, Sec. 9, and 5-129, Sec. 10 ("Ordinance"), requiring a medical examiner to conduct an investigation sufficient to establish the manner and cause of death.[5] The plaintiffs' claim fails, in part, because violation of a municipal ordinance is not per se a violation of any clearly established constitutional right. Although conduct which violates an ordinance may be actionable under Sec. 1983, such action is allowed only when the conduct violates federal constitutional standards. Therefore, the Kompares' claim fails, in part, because the conduct about which the Kompares complain (i.e., the investigation of Jody's death and disclosure of the fibromatosis) does not violate federal standards.[6]
 
 
 20
 The constitutionality of the defendant's conduct cannot be determined by looking to a municipal ordinance. Section 1983 only creates a federal cause of action "against those acting under color of state law who cause a 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]. ' 42 U.S.C. Sec. 1983." Street v. Surdyka, 492 F.2d 368, 371 (4th Cir.1974) (emphasis added). As we have said before, "[i]n many cases the same conduct will violate both state law and the federal Constitution, but certainly not all violations of state law rise to the level of constitutional tort." Id.; Gramenos v. Jewel Companies, 797 F.2d 432, 434, 35 (7th Cir.1986). Many state statutes establish rights and procedures not required by the Constitution. Lojuk, 770 F.2d at 629. Similarly, violations of municipal ordinances are not necessarily of constitutional import.
 
 
 21
 It does not help the plaintiffs that they have couched their argument in Fourteenth Amendment terms, i.e., that violation of the municipal ordinance is per se a violation of due process and thus gives rise to a cause of action under Sec. 1983. Plaintiffs' argument fails because "violation of state law ..., without more, is not a violation of the federal right to procedural due process." Miller v. Carson, 563 F.2d 757, 760 n. 7 (5th Cir.1977); Screws v. United States, 325 U.S. 91, 108-09, 65 S.Ct. 1031, 1038-39, 89 L.Ed. 1495 (1945). Violations of state statutes or municipal ordinances do not necessarily give one a cause of action under Sec. 1983, nor do they necessarily state a violation of the due process clause.
 
 
 22
 Even though the conduct complained of is not a violation of the due process clause solely because it violated a county ordinance (if, indeed, it did), our inquiry is not at an end. We must measure the defendant's conduct against federal standards to see whether it violated clearly established federal rights. In complaining that the defendant violated the Ordinance, the plaintiffs are essentially arguing that the defendant failed to investigate thoroughly Jody's death and failed to reveal exculpatory information. We now analyze the Kompares' claims to determine whether they state violations of rights clearly established at the time of the investigation and prosecution of Jody Kompare's death, and now hold that Richmond had no clearly established constitutional duty to look at the slides or, if she had known that Jody had fibromatosis, to reveal that information.
 
 
 23
 As a preliminary matter, we must take as true Richmond's statement that she did not look at the slides and, thus, did not know that Jody had fibromatosis, until after the grand jury hearing. Richmond testified under cross-examination by Mrs. Kompare's defense attorney at the criminal trial that she did not know of the fibromatosis until after September of 1982, and stated in her affidavit filed in the lower court in support of her summary judgment motion that she did not look at the slides of Jody's mesentery until November 1, 1982. The Kompares allege that this is not true, but have no factual support for their allegations.[7]
 
 
 24
 As discussed earlier, the Kompares argue for an exception to the rule that factual allegations are not sufficient to withstand a motion for summary judgment. In some motions for dismissal or for summary judgment on the basis of qualified immunity, it may be necessary to take the plaintiff's allegations as true. Mitchell v. Forsythe, 472 U.S. 511, 105 S.Ct. 2806, 2816 n. 9, 86 L.Ed.2d 411 (1985). However, it is not necessary in this case with respect to when Richmond looked at the slides. First, unlike most civil trials, the parties have the benefit of the evidence developed at the previous criminal trial. Second, an attorney representing Mrs. Kompare, albeit not the same attorney representing the Kompares in this cause, had and took the opportunity to cross-examine Richmond at the criminal trial. If the issue raised in the civil proceeding had not been brought up in the criminal trial, discovery might be appropriate. However, this issue was specifically addressed at the criminal trial. In response to Mrs. Kompare's attorney's question, Richmond testified that she did not find out that the mesentery was abnormal until after September of 1982. Report of Proceedings at 28, Illinois v. Kompare, No. 82-C-8945 (Cir. Ct. Cook County, Ill. June 21, 1983). Therefore, it is inaccurate to say that the Kompares have not had an opportunity to test Richmond's affidavit. Third, the discovery to which the plaintiffs argue they are entitled shows no indication of raising a genuine issue as to when Richmond looked at the slides. The only pertinent requested discovery on this issue is a proposed deposition of Richmond. Given that Richmond has already testified twice (once in court and once in her affidavit) that she did not look at the slides until after she testified before the grand jury, we do not see how the proposed discovery is reasonably calculated to raise a factual question concerning when she looked at the slides. There is no reason to expect that Richmond would change her earlier testimony. Discovery was not intended to allow plaintiffs to go on such fishing expeditions. The Supreme Court certainly hoped to curtail such activities when it held in Mitchell v. Forsythe, 105 S.Ct. at 2816, that government officials' qualified immunity protected them from the burden of standing trial, including the burden of unwarranted discovery. Therefore, for purposes of this motion, Richmond did not look at the slides of Jody's mesentery tissue and did not discover the fibromatosis until after she testified before the grand jury.
 
 
 25
 The Kompares' first complaint with Richmond's conduct is that Richmond should have known about the fibromatosis before the grand jury hearing. According to plaintiffs, the autopsy was not complete until after Richmond looked at the slides. The Kompares are attempting to impose on Richmond a duty to investigate or to investigate thoroughly. Plaintiffs have failed to cite any case imposing a duty to investigate on either a coroner or a policeman. In fact, the law appears to be just the opposite, i.e., that the police (and, presumably, the coroner) have no constitutional duty to keep investigating a crime once they have established probable cause. Simmons v. Wainwright, 585 F.2d 95, 96 (5th Cir.1978) per curiam); Gramenos v. Jewel Companies, 797 F.2d at 439-40. Therefore, Richmond had no clearly established constitutional duty to investigate Jody's death or to do so thoroughly.
 
 
 26
 The Kompares' other complaint with Richmond's conduct is that she did not reveal exculpatory information. If, as we have found, Richmond did not know and was not required to know of the fibromatosis, she could not have breached a duty to disclose information. However, we will assume, arguendo, that Richmond knew or should have known of the fibromatosis. The Kompares' claim still fails because Richmond did not violate any duty to reveal information for which she can be sued under Sec. 1983.
 
 
 27
 One element of a duty to disclose information is to whom the disclosure must be made. Plaintiffs have not clearly stated to whom the disclosures should have been made, so we will examine the duty with respect to the only possible candidates in this matter--the criminal defendant (Mrs. Kompare), the grand jury, and the prosecutor.
 
 
 28
 The government has a duty to reveal exculpatory information to a criminal defendant, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but the disclosure need not be made until trial as long as the defendant is not prevented from having a fair trial. United States v. Allain, 671 F.2d 248, 255 (7th Cir.1982). Richmond's finding of fibromatosis was disclosed two weeks before trial, and plaintiffs have not alleged that Mrs. Kompare's trial was unfair in any manner. Indeed, it would be very hard to do so given her acquittal. Therefore, Richmond did not violate any duty to reveal exculpatory information to the criminal defendant.
 
 
 29
 As to the duty to reveal information to the grand jury, not only was the duty not clearly established at the time of the hearing,[8] but witnesses have absolute immunity for their testimony before grand juries. See Kincaid v. Eberle, 712 F.2d 1023, 1023-24 (7th Cir.1983) (applying Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) to grand jury witnesses), cert. denied, 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983); see also, San Filippo v. U.S. Trust Company of New York, 737 F.2d 246, 254 (2nd Cir.1984), cert. denied, 470 U.S. 1035, 105 s.Ct. 1408, 84 L.Ed.2d 797 (1985). But see Wheeler v. Cosden Oil and Chemical Company, 734 F.2d 254, 261 n. 16 (5th Cir.1984), modified, 744 F.2d 1131 (1984) (relevant portions reaffirmed). Thus, no Sec. 1983 action can lie against Richmond for what she said or did not say to the grand jury.
 
 
 30
 The Kompares have not presented any cases concerning a clearly established right to reveal exculpatory information to the prosecutor, and we have found none. However, we need not address this "right" because plaintiffs have not alleged any harm from Richmond's alleged violation of it. The undisputed facts are in Richmond's favor, for the prosecutor continued with the prosecution even after he found out about the fibromatosis. He knew of Jody's condition two weeks before trial, which gave him enough time to dismiss the charges if he felt that was warranted by the new information. His continuation of the prosecution after Richmond informed him that Jody had fibromatosis suggests that it did not matter when Richmond disclosed Jody's condition.
 
 
 31
 Therefore, Richmond is entitled to the protection of qualified immunity against the charges that she violated the Kompares' due process rights by violating the Cook County ordinance requiring medical examiners to conduct an autopsy sufficient to determine the manner and cause of death. Violations of county ordinances are not per se violations of Fourteenth Amendment due process rights. Additionally, when Richmond's conduct is judged by federal standards, it is clear that she did not violate any clearly established federal constitutional right for which she can be held liable in a Sec. 1983 action.
 
 B.
 
 32
 The Kompares' second asserted cause of action is for violation of Mrs. Kompare's right to be prosecuted only for probable cause, stemming from either the Fourth Amendment (as incorporated by the Fourteenth) or from the procedural due process clause of the Fourteenth Amendment. A finding of probable cause is an absolute defense to an action for prosecution without probable cause. The district court dismissed this claim because it found that there was probable cause to prosecute Mrs. Kompare.[9] We now affirm that holding.
 
 
 33
 Mrs. Kompare's acquittal of voluntary manslaughter for the death of her son does not establish that the government lacked probable cause to prosecute her. At Mrs. Kompare's criminal trial, the government had to prove her guilt beyond a reasonable doubt. The government's failure to meet this very stringent standard does not mean that it did not meet the lesser probable cause standard, i.e., a reasonable belief that an offense has been committed and that the criminal defendant committed the crime. Williams v. Kobel, 789 F.2d 463, 470 (7th Cir.1986).
 
 
 34
 Any doubt as to whether the prosecution was without probable cause must be resolved in favor of the defendant because she has qualified immunity unless she violated a clearly established right. The plaintiffs must not only prove the existence of the right in the abstract (e.g., right to be free from prosecution for less than probable cause), they must also prove that a reasonable person in the same factual circumstances as the defendant would have realized that she was violating a constitutional right. Azeez v. Fairman, 795 F.2d 1296, 1301-02 (7th Cir.1986). We hold that a reasonable person would not have known she was violating Mrs. Kompare's constitutional rights by causing the initiation or continuation of her prosecution for voluntary manslaughter. This is especially true under these circumstances where a five-year-old boy, with twenty-two areas of bruising, and internal hemorrhaging beneath the scalp, died from blunt trauma to the abdomen which caused the small bowel mesentery to tear and bleed profusely, and where Mrs. Kompare admitted that, on the morning of his death, she hit the boy so hard that he doubled over in pain.
 
 
 35
 Not only do we make the above holding as indicated, but we are also compelled to do so by the grand jury's return of the indictment. The indictment establishes that there was probable cause for the prosecution, and we are bound by this determination because the indictment was fair upon its face and returned by a properly constituted grand jury. Gerstein v. Pugh, 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 865 n. 19, 43 L.Ed.2d 54 (1975).[10] If the grand jury had not heard evidence that the prosecutor was required to present, then we might not be bound by its determination. However, such is not the case. Jody's fibromatosis is the only evidence the Kompares are alleging should have been disclosed to the grand jury. This information did not have to be revealed because, as discussed earlier, Richmond did not know and was not required to have known about the fibromatosis. Even if she had known about it, she would not have been required to reveal it to the grand jury because it did not clearly negate Mrs. Kompare's guilt. See Flomenhoft, 714 F.2d at 712. Richmond's discovery of fibromatosis did not change her opinion as to the cause of death, although it indicated that the blow that killed Jody might not have been as hard as Richmond originally thought. An unspecified change in the degree of force necessary to kill Jody does not negate Mrs. Kompare's guilt of the crime of voluntary manslaughter. Her prosecution was not one without probable cause.
 
 IV.
 
 36
 For the reasons cited above, it is clear that Richmond is entitled to qualified immunity for her autopsy of Jody Kompare. The standard the Kompares have attempted to impose on Richmond through this Sec. 1983 action is unrealistic. The nature of criminal investigations is such that police officers and medical examiners must be given freedom in which to exercise their discretion as to which leads to follow and when to follow them. There is no genuine issue of material fact, and Richmond and Stein are entitled to judgment as a matter of law. Therefore, the order of the district court granting summary judgment is AFFIRMED.
 
 
 
 *
 The Honorable James E. Noland, Chief District Judge for the Southern District of Indiana, is sitting by designation
 
 
 [1]
 Stein is entitled to dismissal because plaintiffs have not alleged that he was personally involved in anything connected to the autopsy or the findings based thereon. In a Sec. 1983 suit, Stein cannot be held vicariously liable for the acts or omissions of his employees. See, e.g., Duckworth v. Franzen, 780 F.2d 645, 650 (7th Cir.1985)
 
 
 [2]
 Henceforth, "the defendant" will refer only to Richmond (unless otherwise noted). It is her acts, and her acts alone, which form the basis of the Kompares' complaint. See Note 1, supra. Although the remainder of the opinion is worded in terms of Richmond's qualified immunity, it also applies to Stein and gives an alternative basis for dismissing the action against him
 
 
 [3]
 In an earlier motion, the district court denied defendants' claim for absolute immunity. The defendants did not appeal said ruling. In litigation situations, absolute immunity is generally available only to judges, prosecutors, and testifying witnesses. Mitchell v. Forsythe, 472 U.S. 511, 105 S.Ct. 2806, 2812, 86 L.Ed.2d 411 (1985). Absolute immunity has not been extended to police officers, Scheuer v. Rhodes, 416 U.S. 232, 245, 94 S.Ct. 1683, 1691, 40 L.Ed.2d 90 (1974), except to the extent that they are testifying witnesses, Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)
 
 
 [4]
 Federal statutory rights are not at issue
 
 
 [5]
 The Cook County ordinances, in pertinent part, are as follows:
 5-128. Section 9. The Medical Examiner shall investigate any human death that falls within any or all of the following categories:
 A. Criminal violence.
 B. Suicide.
 C. Accident.
 D. Suddenly when in apparent good health.
 E. Unattended by a practicing, licensed physician.
 * * *
 5-129. Section 10. Where a death has occurred under any of the circumstances enumerated in Section 9, then an investigation including autopsy if necessary, shall be conducted sufficient to establish manner and cause of death, and the Medical Examiner shall recover and retain any and all evidence for use in the investigation.
 * * *
 5-131. Section 12. If it is the Medical Examiner's opinion that any death may have resulted from the criminal conduct of persons other than the deceased, he shall immediately notify the Office of the State's Attorney....
 
 
 [6]
 Violations of state laws do not abrogate an official's qualified immunity from suit for violation of federal constitutional rights. Davis v. Scherer, 468 U.S. at 193-96, 104 S.Ct. at 3019-21
 
 
 [7]
 The plaintiffs have argued that Richmond's statement that she finished the autopsy on September 12, 1982 and that she did not look at the slides until November 1, 1982 are inconsistent, and, therefore, raise a genuine issue of material fact. When the record is viewed as a whole, the statements are not inconsistent. It is clear that the autopsy completed in September did not include a microscopic examination of the tissue slides
 
 
 [8]
 The case law discussing the prosecutor's duty (and, arguably, the coroner's duty) to reveal exculpatory information to the grand jury did not start developing until 1975 and is not clearly established. See generally 2 LaFave & Israel, Criminal Procedure Sec. 15.4(d) (1984). In the Seventh Circuit, the duty was not even mentioned until 1983, one year after Richmond testified before the grand jury. United States v. Flomenhoft, 714 F.2d 708, 712 (7th Cir.), cert. denied, 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984). Cf. United States v. Kilroy, 523 F.Supp. 206, 214 (E.D.Wis.1981) (holding that the prosecutor had no duty to reveal exculpatory information to the grand jury). Furthermore, a violation of the duty cannot be actionable under Sec. 1983 if the duty arises from state law, see Johnson v. Superior Court, 15 Cal.3d 248, 124 Cal.Rptr. 32, 539 P.2d 792 (1975), or from the function of the grand jury in the federal system, see United States v. Dorfman, 532 F.Supp. 1118, 1132 (N.D.Ill.1981), or from the federal courts' oversight responsibilities for the conduct of criminal prosecutions in the federal system. We need not decide in this case the nature and source of any duty there may be to present exculpatory evidence to the grand jury
 
 
 [9]
 There are several other possible problems with the Kompares' claim for a right to prosecution only for probable cause. First, the constitutional right to be free from prosecution except for probable cause may not exist distinct from the right to be free from malicious prosecution. Plaintiffs have not cited even one case discussing prosecution without probable cause, and we could not find any cases discussing such a right, although one case did mention it. Charles v. Wade, 665 F.2d 661, 662 (5th Cir.1982), cert. denied, 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983). In fact, the one case cited by plaintiffs in support of their right to prosecution only for probable cause is a constitutional malicious prosecution case. McCrimmon v. Kane County, 606 F.Supp. 216 (N.D.Ill.1985). There are, however, several cases recognizing a constitutional right to be free from malicious prosecution, one element of which is that the prosecution lacked probable cause. See, e.g., Occhino v. United States, 686 F.2d 1302, 1311 (8th Cir.1982); Terket v. Lund, 623 F.2d 29, 31 (7th Cir.1980); Hampton v. Hanrahan, 600 F.2d 600, 630 (7th Cir.1979), rev'd on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Second, whether or not the right to be free from prosecution without probable cause exists, it does not appear to be clearly established. Thus, it appears that Richmond's qualified immunity would protect her from this claim. Third, if the right springs from the Fourteenth Amendment right to procedural due process, then this claim may be barred under Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), because an established state procedure arguably was not involved and the Illinois tort of malicious prosecution appears to provide an adequate state remedy. See McCrimmon v. Kane County, 606 F.Supp. at 222-23. Fourth, to the extent this cause of action is based on negligence (or perhaps even gross negligence or recklessness) the plaintiffs may not have stated a violation of their Fourteenth Amendment rights. Daniels v. Williams, --- U.S. ---, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)
 
 
 [10]
 This holding is not damaged by the Supreme Court's holding in Malley v. Briggs, --- U.S. ---, 106 S.Ct. 1092, 1098-99, 89 L.Ed.2d 271 (1986), that, in a Sec. 1983 action, a magistrate's probable cause determination on an arrest warrant application did not automatically protect the police officer who applied for the warrant. The procedural protections in grand jury hearings, particularly the involvement of a group of jurors, are much greater than those available when arrest warrants are issued