McCarthy v. Milford, et al.        CV-02-372-M    02/18/04
                UNITED STATES DISTRICT COURT

                DISTRICT OF NEW HAMPSHIRE


John C. McCarthy,
       Plaintiff

       v.                              Civil No. 02-372-M
                                       Opinion No. 2004 DNH ___
Town of Milford,
Frederick G. Douglas, and
James F. Mulla,
       Defendants


                        **O R D E R**


     On August 1, 2002, pursuant to a warrant issued by a state
court judge, plaintiff, John McCarthy, was arrested for
disorderly conduct (a violation) and making a false report to
police (a misdemeanor), stemming from an altercation in which he
was involved nearly a year earlier.  Eventually, the charges
against McCarthy were dismissed: the prosecutor concluded that
the statute of limitations had run with regard to the disorderly
conduct charge, and the court dismissed the false report charge
on speedy trial grounds when the state's chief witness was unable
to attend trial (as a result of his having been called to
military service).

Thereafter, McCarthy brought this suit against the Town of Milford, New Hampshire, its Chief of Police (Frederick Douglas), and the officer who sought and obtained the warrant for his arrest (James Mulla).

Plaintiff's complaint advances two claims under federal law: in count one, McCarthy alleges that Officer Mulla violated his constitutionally protected right to be free from unreasonable searches and seizures; and, in count three, McCarthy claims that the Town and Chief Douglas maintained an unconstitutional custom or policy by failing "to establish or communicate to the officers of the said police department a policy of protecting the rights of citizens to be secure against unreasonable searches and seizures." Complaint at para. 27. McCarthy also advances three state law claims (failure to supervise, malicious prosecution, and respondeat superior), over which he asks the court to exercise supplemental jurisdiction.

Defendants move for summary judgment on plaintiff's federal claims, and ask that the court decline to exercise its

supplemental jurisdiction over his state law claims. Plaintiff objects.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may

be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). As the Court of Appeals for the First Circuit has observed, "the evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial. Conclusory allegations, improbable inferences, and unsupported speculation will not suffice." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (citations and internal quotation marks omitted). See also Coyne v. City of Somerville, 972 F.2d 440, 444-45 (1st Cir. 1992) ("[T]hough for pleading purposes the line between sufficient facts and insufficient conclusions is often blurred, we nonetheless require that it be plotted.") (citation and internal punctuation omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(e). Consequently, while a reviewing court must take into account all properly documented facts, it may

4

ignore bald assertions, unsupported conclusions, and mere speculation, see Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997), as well as those allegations "which have since been conclusively contradicted by [the non-moving party's] concessions or otherwise," Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

## Background

On August 6, 2000, plaintiff stopped at a Cumberland Farms store in Milford, New Hampshire, to purchase gasoline. When the self-service pump failed to activate, he went into the store, told the cashier that he wanted $10 worth of gas, and asked that she activate the pump. According to plaintiff, her response was less cordial than he would have liked. Plaintiff, in turn, angrily "told her to shove the gas" and offered a few other pleasantries, using language that "wasn't probably nice." He left the store to return to the pump. Exhibit A to defendants' memorandum, deposition of John McCarthy at 57.[1] After he went outside, plaintiff says another employee of the store (William

---

[1]     Exhibits submitted by defendants are referenced by letter, while those submitted by plaintiff are referenced by number.

5

Wheeler) "come up in back of me and shoved me, whacked me, shoved me. I turned around, and he flipped the hot coffee in my face. I went down with the - when the coffee hit me, it was unexpected. I went down, and I fell on my ass." Id. at 57-58. Plaintiff described the subsequent events as follows:

> And I couldn't get up fast enough to get at him. He laughed. He had a rotten smirk on his yellow f-ing face, and I called him - it was [an] exchange of words. And I - the usual, whatever.
>
> When I went down, I screwed up my knee and I couldn't get up very easily. It was killing me. I went after him. And he kept moving away from me, and I couldn't get him. . . . I called him a yellow prick. I told him he didn't - whatever. I mean, it was all - it was - I flipped out. . . .
>
> What happened next? I went after him. I was hobbling, trying to get him, trying to get a piece of him. And I couldn't. He just kept moving. And I don't know. From there, I went back to my truck, whatever. And then somebody called the cops, and two cops came.

Id. at 58-59.

Officer Mulla was one of the police officers who responded to the altercation and spoke with plaintiff. Based upon his conversation with plaintiff (and his observation that plaintiff had coffee on his shirt), Mulla reported that:

6

> Wheeler grabbed him from the rear by the left
> [shoulder], spun him around, and threw hot coffee in
> his face while saying, 'Hey, you wise prick.'
> McCarthy's shirt was stained by what appeared to be
> coffee in the area of his left [shoulder], and he
> stated that this was from wiping his face with his
> shirt.

Exhibit 5, Incident Report completed by Officer Mulla.


Mulla also interviewed Wheeler, who said he followed plaintiff out of the store to speak with him, told him he had to pump his own gas, made some gesture with his arms and, in the process, some of his coffee spilled out of the cup he was holding and landed on plaintiff. Wheeler denied that he ever had any physical contact with plaintiff or that he intentionally threw the coffee at him. Exhibit D, Uniform Statement Form completed by William Wheeler.

Wheeler's claim that he never touched plaintiff was supported by one of the witnesses to the exchange - Annette Gagnon, the cashier with whom McCarthy had exchanged words earlier. In her hand-written statement to police, Gagnon said she watched the men during their entire encounter and never saw

7

either man strike the other. Exhibit E, Uniform Statement Form completed by Annette Gagnon. See also Exhibit F, Uniform Statement Form completed by Alice Kauffman (a customer of the store who witnessed the confrontation between McCarthy and Wheeler, and said that plaintiff "just got in the face of the assistant manager [who] was trying to get away from him by walking away, but [plaintiff] just kept walking.").[2]

Although plaintiff claimed to have sustained injuries from the altercation (as a result of having allegedly fallen to the ground) and wanted to press charges, Officer Mulla explained that absent the testimony of a witness who could corroborate plaintiff's version of the events, he would not file assault charges against Wheeler.

---

[2] At a subsequent deposition, Ms. Kauffman testified that she never saw Wheeler throw a cup of coffee at McCarthy and that she never saw McCarthy fall to the ground. Exhibit G, Trial testimony of Alice Kauffman at 5-6. Kauffman also testified that, after the altercation, she asked Wheeler if everything was alright. "And he said that [plaintiff] said that he had [thrown] coffee in his face and so I looked at him and I looked at the cup [of] coffee and I said to Mr. Wheeler, if you threw a cup [of] coffee in his face, how come your cup [of] coffee is almost full?" Id. at 6-7.

8

Subsequently, McCarthy filed a civil suit against Wheeler and his employer, Cumberland Farms, seeking damages for the alleged assault. That case proceeded to trial, and a state jury returned a verdict in favor of the defendants. See Exhibit Y. Prior to trial, however, the case received some publicity in the local newspaper. And, after reading an article about plaintiff's civil claims against Wheeler and Cumberland Farms, two additional witnesses to the events of August 6, 2000, came forward.

On July 9, 2001, Joseph and Marcelle Oneail contacted Chief Douglas and reported that they had witnessed the altercation between plaintiff and Wheeler. In their written statements to police (as well as their subsequent testimony at the civil trial brought by plaintiff against Wheeler), the Oneails reported that: (1) they witnessed the entire incident; (2) plaintiff, and not Wheeler, had been the aggressor; (3) Wheeler had not thrown coffee at plaintiff; and (4) plaintiff never fell to the ground. See Exhibit J, Uniform Police Form completed by Marcelle Oneail; Exhibit K, Uniform Statement Form completed by Joseph Oneail (stating that he believed Wheeler's coffee spilled on plaintiff, as Wheeler responded in a defensive way, trying to withdraw from

9

plaintiff, who was "charging" at him).  See also Exhibit G, trial testimony of Marcelle Oneail at 10-14; Exhibit G, trial testimony of Joseph Oneail at 16-23.

In the wake of the reports made by Mr. and Mrs. Oneail, Captain Winterburn of the Milford Police Department reviewed all of the witness statements relating to the incident, including those given by both plaintiff and Wheeler.  He then concluded that there was probable cause to believe that plaintiff had given false statements to the officers and that he had engaged in disorderly conduct.  Exhibit L, Affidavit of John Winterburn at para. 3.  Accordingly, he assisted Mulla in preparing an affidavit in support of an arrest warrant.  Milford District Court Judge Drescher issued the warrant on August 1, 2001.

Later that day, plaintiff was arrested, charged, and released from custody.  As noted earlier, prior to plaintiff's criminal trial the prosecutor dismissed the disorderly conduct charge, concluding that the pertinent state statute of limitations had run.  And, when Officer Mulla was called to active military duty to serve in support of Operation Enduring

Freedom, he became unable to testify at the trial. Because Mulla was a critical witness to the government's case against plaintiff, the court dismissed the remaining charge (i.e., filing a false police report). This litigation ensued.

**Discussion**

I. Plaintiff's Federal Claims.

Plaintiff's federal claims are brought under 42 U.S.C. § 1983, which subjects to civil liability any person who, acting under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws." All agree that Officer Mulla was, at all times relevant to this proceeding, acting under color of state law. Accordingly, the first question that necessarily arises is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" Baker v. McCollan, 443 U.S. 137, 140 (1979). Here, plaintiff alleges that Officer Mulla deprived him of his Fourth Amendment right to be free from unreasonable arrest or seizure - that is, an arrest or seizure not supported by probable cause.[3]

---

[3] Plaintiff also claims that Officer Mulla's conduct "deprived the plaintiff of his rights to freedom of speech [and] freedom to petition for the redress of grievances." Complaint at

11

Obviously, then, in resolving defendants' motion for summary judgment, the court must determine whether Mulla had probable cause to arrest plaintiff for filing a false police report and/or disturbing the peace. Probable cause to believe that plaintiff had committed either of the two offenses with which he was charged would have been sufficient to justify his subsequent arrest. See, e.g., Dowling v. City of Philadelphia, 855 F.2d 136, 142 n.7 (3d Cir. 1998) (finding consideration of whether probable cause existed for arrest for criminal conspiracy unnecessary where there was probable cause to arrest for defiant trespass).

The court of appeals for this circuit has held that "[p]robable cause to arrest exists if, at the moment of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense." Roche v. John Hancock Mutual Life Ins.

---

para. 23. Those claims are, however, frivolous. And, because they are not addressed in plaintiff's memorandum, the court will assume that they have been waived.

12

<u>Co.</u>, 81 F.3d 249, 254 (1st Cir. 1996) (emphasis supplied). <u>See</u> <u>also</u> <u>Hartgers v. Town of Plaistow</u>, 141 N.H. 253, 255 (1996) ("Probable cause to arrest exists when the arresting officer has knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense. The determination of probable cause must be viewed in the light of factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act.") (citations omitted). Here, when he sought an arrest warrant for plaintiff, Officer Mulla had probable cause to believe that plaintiff had committed both of the offenses with which he was charged.[4]

---

[4] Parenthetically, the court notes that <u>after</u> Mulla obtained the arrest warrant and charges were filed against plaintiff, the attorney representing plaintiff in his civil suit against Wheeler and Cumberland Farms forwarded three witness statements to the prosecutor. Those statements, made by friends and/or business acquaintances of plaintiff, supported his version of the events of August 6, 2000. Importantly, however, prior to August 1, 2001 (the date on which Mulla sought and obtained the arrest warrant), those witnesses never came forward to the police to report what they had observed, nor were the police aware that there had, at least allegedly, been additional witnesses to the events in question. Moreover, once he determined that there was probable cause to arrest plaintiff, even if Mulla subsequently became aware of those witnesses, he was under no constitutional obligation to interview them. <u>See, e.g.</u>, <u>Kompare v. Stein</u>, 801 F.2d 883, 890 (7th Cir. 1986) ("[T]he police . . . have no constitutional duty to keep investigating a crime once they have established probable cause."). <u>See</u> <u>also</u> <u>Franco-de Jerez v.</u>

13

While officer Mulla conceded that, on the day of the incident, he did not believe there was probable cause to charge plaintiff with any criminal offenses, see Exhibit 13, Deposition of James Mulla at 19, circumstances changed once the Oneails came forward and gave their eye-witness accounts of the events in question. The statements given by those two additional witnesses corroborated (and expanded upon) those taken from the other known eye-witnesses: Annette Gagnon (the cashier) and Alice Kauffman (a customer). Specifically, Officer Mulla then had statements from four witnesses to the events in questions (not including Wheeler), all of which supported the view that: (1) plaintiff, and not Wheeler, was the aggressor; (2) Wheeler did not have any physical contact with plaintiff; (3) Wheeler did not intentionally assault plaintiff by throwing coffee on him but, instead, accidentally spilled coffee on plaintiff; (4) plaintiff did not fall to the ground, nor did he sustain any injuries as a result of the confrontation with Wheeler; and (5) plaintiff

Burgos, 876 F.2d 1038, 1042 (1st Cir. 1989) (citing Kompare); Romero v. Fay, 45 F.3d 1472, 1478 (10th Cir. 1995). "[H]aving once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car." Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986).

14

shouted a steady stream of obscenities, first at the cashier, and subsequently at Wheeler as he pursued Wheeler around the parking lot.

Given the two new witness statements, particularly when read in light of the original witness statements, Mulla had "reasonably reliable information . . . adequate to warrant a prudent person in believing that" plaintiff had committed the offenses with which he was subsequently charged. Roche, 81 F.3d at 254. Under New Hampshire law, a person engages in disorderly conduct if, among other things, he or she:

> (a) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or
>
> (b) Directs at another person in a public place obscene, derisive, or offensive words which are likely to provoke a violent reaction on the part of an ordinary person.

N.H. Rev. Stat. Ann. ("RSA") 644:2 II. Based on the information before him on August 1, 2001, Officer Mulla had more than adequate reason to believe that plaintiff had engaged in both forms of disorderly conduct identified above. In fact, plaintiff's own (subsequent) deposition testimony supports

15

Mulla's earlier conclusion that plaintiff had engaged in disorderly conduct. See Exhibit A, Deposition of John McCarthy at 57-59 (describing the offensive, fighting words he directed at Wheeler as he tried "to get a piece of him.").

Similarly, with the benefit of the two additional eye-witness accounts of the altercation, Mulla had probable cause to believe that plaintiff had made false statements to the responding officers about the events in question. Specifically, he had probable cause to believe that plaintiff was not truthful when he reported that Wheeler assaulted him (by grabbing his shoulder), purposefully "threw" hot coffee in his face, and caused plaintiff to fall to the ground, injuring his knee. See generally RSA 641:4.

Because the court concludes that, as a matter of law, on August 1, 2001, Officer Mulla had probable cause to believe that plaintiff had engaged in disorderly conduct and made a false report to law enforcement officers, it need not address plaintiff's meritless claims that Mulla misled the judge who issued the arrest warrant, by distorting (or omitting) relevant

16

facts from his affidavit in support of the arrest warrant. Defendants' are entitled to summary judgment on count one of plaintiff's complaint.

Alternatively, to the extent that count one of plaintiff's complaint (captioned "Unreasonable Search and Seizure") actually advances a federal claim for malicious prosecution, the defendants are entitled to summary judgment on that claim as well. See Complaint at para. 23 (asserting that Officer Mulla "deprived the plaintiff of his rights to freedom of speech; freedom to petition for the redress of grievances; freedom from unreasonable arrest, search, and seizure; freedom from arrest without probable cause; and freedom from malicious prosecution . . . rights secured to the plaintiff by the First, Fourth, and Fourteenth Amendments.") (emphasis supplied).[5]

First, to the extent plaintiff is seeking damages for alleged violations of his Fourteenth Amendment rights, § 1983 is generally not a proper vehicle by which to vindicate due process

_____

[5] Although his complaint invokes rights protected by the First and Fourteenth Amendments, plaintiff's memorandum focuses exclusively on the Fourth Amendment - that is, whether his arrest was supported by probable cause.

17

rights (whether procedural or substantive) in the context of a malicious prosecution claim.

> We note as an initial matter that [plaintiff's] § 1983 malicious prosecution claim is not properly based on either a procedural or substantive due process violation. A § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action. Further, there is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution.

Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) (citations and internal quotation marks omitted). See also Roche 81 F.3d at 256 ("The law is settled that a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail. There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution, and the availability of a plainly adequate remedy under [state] law defeats the possibility of a procedural due process claim.") (citations omitted).

Accordingly, the court will assume that plaintiff is seeking to vindicate his Fourth Amendment rights through the malicious prosecution claim arguably set forth in count one. To prevail,

18

plaintiff must demonstrate that "criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor." Landrigan v. City of Warrick, 628 F.2d 736, 745 n.6 (1st Cir. 1980). See also Meehan, 167 F.3d at 89 ("Thus, a § 1983 malicious prosecution action based upon a deprivation of Fourth Amendment rights requires a showing of the absence of probable cause to initiate proceedings."). As noted above, however, the record establishes that, as a matter of law, on August 1, 2001, Officer Mulla did have probable cause to seek an arrest warrant for plaintiff. Consequently, even if plaintiff were advancing a "malicious prosecution" claim against these defendants, such a claim would necessarily fail. See Roche, 81 F.3d at 256 n.5.

Finally, because, as a matter of law, Officer Mulla did not violate plaintiff's Fourth Amendment rights, plaintiff's derivative claim against the Town and Chief Douglas (count three - municipal liability) necessarily fails. Absent an underlying constitutional violation, a plaintiff has no § 1983 claim against a police officer's municipal employer based upon an allegedly unconstitutional municipal custom or policy, or based upon an

19

alleged failure to adequately train.  See Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer," that person has no claim under section 1983 against the officer's municipal employer).  See generally Monell v. Dept. of Social Servs., 436 U.S. 658, 694-95 (1978); Canton v. Harris, 489 U.S. 378, 385 (1989).

II.  Plaintiff's State Law Claims.

In counts two, four, and five of his complaint, plaintiff advances several state common law claims, over which he asks the court to exercise supplemental jurisdiction.  Complaint at para. 2.  See also 28 U.S.C. § 1367.  Section 1367 provides that the court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

> (1)  the claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or

20

(4) in exceptional circumstances, there are other
compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). To assist district courts, the Court of Appeals for the First Circuit has identified the following additional factors that should be considered when determining whether to exercise supplemental jurisdiction over state law claims: (1) the interests of fairness; (2) judicial economy; (3) convenience; and (4) comity. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). With regard to principles of fairness and comity, the Supreme Court has observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted).

Given that the court has dismissed all of plaintiff's federal claims, and in the interests of both comity and fairness to the parties, the court declines to exercise supplemental

jurisdiction over the state law claims in counts two, four, and five of plaintiff's complaint.

III. <u>Plaintiff's Rule 56 Motion</u>.

At the conclusion of his memorandum in opposition to summary judgment, plaintiff suggests that, should the court be inclined to grant defendants' motion, it should instead afford him additional time within which to take what he says is essential discovery. That "motion" is denied. First, it fails to comply with this court's local rules. <u>See</u> L.R. 7.1(a) ("Motions, other than those submitted during trial, shall be considered only if submitted separately from other filings and only if the word 'motion' appears in the title."). Moreover, having chosen to submit an objection, a legal memorandum, and over one hundred pages of exhibits in opposition to defendants' motion for summary judgment, plaintiff cannot attempt to fall back on the provisions of Rule 56(f), should his efforts to defeat summary judgment prove fruitless. <u>See, e.g.</u>, <u>C.B. Trucking, Inc. v. Waste Management, Inc.</u>, 137 F.3d 41, 44 (1st Cir. 1998) ("[O]rdinarily, a party may not attempt to meet a summary judgment challenge

head-on but fall back on Rule 56(f) it its first effort is unsuccessful.").

Finally, on a more substantive level, plaintiff's request lacks merit. The discovery he seeks is either irrelevant to the issue of probable cause (e.g., his desire to depose Police Captain Winterburn) or has been available to him for a substantial amount of time (e.g., the opportunity to depose Mr. and Mrs. Oneail, both of whom were witnesses who testified at plaintiff's civil trial against Wheeler and Cumberland Farms). See generally Exhibit 20, Affidavit of John McCarthy.

## Conclusion

For the foregoing reasons, and for the reasons set forth in defendants' memoranda (documents no. 13 and 20), defendants are entitled to judgment as a matter of law on counts one and three of plaintiff's complaint. With regard to the state law claims advanced in counts two, four, and five of the complaint, the court declines to exercise its supplemental jurisdiction and those claims are dismissed without prejudice.

23

The Clerk of Court shall enter judgment in favor of defendants in accordance with this order and close the case.

**SO ORDERED.**

 

_____
Steven J. McAuliffe
United States District Judge

February 18, 2004

cc:  Donald E. Gardner, Esq.
      Thomas B. Merritt, Esq.