Michael SCHERTZ, Beverly Schertz
and Michael E. Sias, Trustee in
Bankruptcy, Plaintiffs,

v.

WAUPACA COUNTY, William Mork,
Robert Andraschko, Dennis Kussmann,
Larry Jensen, Donald Berglund, Louis
Tomaselli, Carl Paetzke, and Unknown
John Doe Insurance Cos., Defendants.

No. 86–C–739.

United States District Court,
E.D. Wisconsin.

March 22, 1988.

Alvin R. Ugent, Podell, Ugent & Cross, Milwaukee, Wis., for plaintiffs.

Robert Johnson, Cook & Franke, Milwaukee, Wis., for Waupaca County, William Mork, Robert Andraschko, Dennis Kussmann, Larry Jensen, and Donald Berglund.

David T. Flannagan, Asst. Atty. Gen., Madison, Wis., for Louis Tomaselli and Carl Paetzke.

## DECISION AND ORDER

CURRAN, District Judge.

In the early morning hours of July 14, 1985, policeman Gerald Mork was found dead near Iola, Wisconsin. Iola's Police Chief Michael Schertz was subsequently arrested and tried for murdering Mork. However, a jury found Schertz not guilty of the murder and another jury found him not guilty of related charges of theft and misconduct in office. Shortly after the conclusion of this second trial, plaintiffs Michael Schertz and his wife Beverly filed the above-captioned lawsuit seeking compensatory and punitive damages and alleging that the defendants violated their federal civil rights and engaged in other tortious conduct which caused injury to them. The defendants [1] are: Waupaca County (Wisconsin); William Mork, Sheriff of Waupaca County and father of Gerald Mork; Robert Andraschko, Chief Deputy of the Waupaca County Sheriff's Department; Dennis Kussmann, Larry Jensen, and Don-

---

1. The individual defendants are being sued in their personal and official capacities.

Thomas Maroney, District Attorney of Waupaca County, and General Casualty Company were also served as defendants, but the parties stipulated to the dismissal of all claims against them.

*See* Stipulation and Order for Dismissal (filed July 30, 1987) (dismissing claims against General Casualty Company); Stipulation and Order for Dismissal (filed January 13, 1987) (dismissing claims against Thomas Maroney).

ald Berglund, officers in the Waupaca County Sheriff's Department (the six, collectively called the "Waupaca County Defendants" throughout this opinion); and, Louis Tomaselli and Carl Paetzke, special agents for the Wisconsin Department of Justice (collectively called the "State Defendants" throughout this opinion). The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and the doctrine of pendent jurisdiction.

After the filing of the complaint on July 18, 1986, the defendants moved for summary judgment on the ground that they are immune from suit. The court granted their motions in part, but also gave the plaintiffs additional time to conduct discovery. *See* Decision and Order of March 24, 1987. All discovery in this case has now been completed and the defendants have again moved for summary judgment in their favor on the grounds that there are no material issues of disputed fact and that they are entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56. These motions are now fully briefed and ready for decision.

## I. FACTS

In support of their motion for summary judgment and based on evidence in the record, the Waupaca County Defendants [2] have offered the following version of the circumstances surrounding this action:

In the early morning hours of July 14, 1985, Iola Police Officer Gerald Mork was found murdered in a Waupaca County cemetery. He had been shot twice in the back of the head.

Chief Deputy Robert Andraschko of the Waupaca County Sheriff's Department learned of the murder at approximately 5:30 a.m. He quickly decided to request the assistance of the Wisconsin Department of Justice in the investigation. Within hours of the discovery of the body, a thorough crime scene investigation was under way by members of the

Waupaca County Sheriff's Department and the State Crime Lab.

This investigation was followed by the assignment of two Justice Department investigators, special agents Louis Tomaselli and Carl Paetzke, within days of the murder. Thereafter, and pursuant to Andraschko's request for state assistance, Tomaselli and Paetzke assisted in the murder investigation and in the prosecution of Schertz for murder, theft and misconduct in public office.

Waupaca County Sheriff William Mork was the father of Gerald Mork. He was out of the county, at Pelican Lake, Wisconsin, when his son's body was discovered. He was notified of the murder by a sergeant from the Oneida County Sheriff's Department. On the drive back to Waupaca, Sheriff Mork decided he should not participate in the investigation because the victim was his son. Consequently, on his arrival at the crime scene on July 14, Sheriff Mork removed himself from active participation in the investigation, and placed Chief Deputy Andraschko in charge on behalf of the Waupaca County Sheriff's Department. At no time did Sheriff Mork participate in any way in any investigation leading to the filing of charges against Schertz.

The investigation produced circumstantial evidence linking Schertz to the murder, as well as evidence he confiscated, and later sold, a private citizen's pistol.

On July 24, 1985, Special Agents Tomaselli and Paetzke, together with assistance from members of the Waupaca County Sheriff's Department (Andraschko, Berglund, Kussmann and Jensen), searched the Village of Iola Police Department office and the Schertz residence. These searches were conducted with Michael Schertz's express consent and in the presence of Schertz and his attorney, Thomas O. Schultz.

Schertz was originally taken into custody by Special Agent Tomaselli on July 24, 1985, following the search of his resi-

---

**2.** A more detailed statement of facts is found in the State Defendants' Brief in Support of Second

Motion for Summary Judgment at 1–14.

dence. Several Waupaca County deputies were present, but did not actually take part in the arrest. Schertz was immediately transported to the Portage County Jail for incarceration. He was not jailed in Waupaca County. No use of force was necessary in making the July 24, 1985 arrest, nor was there ever any verbal or physical abuse of Schertz by any Waupaca defendant.

On July 25, 1985, a criminal complaint was issued charging Schertz with theft of a firearm and misconduct in public office. These charges were based upon certain statements against interest made by Schertz to Tomaselli, and statements of citizen witness Hayden, the owner of the firearm.

On August 3, 1985, after a hearing, Waupaca County Circuit Judge Philip M. Kirk determined there was probable cause to issue a warrant for the search of land and buildings owned by Schertz, including a liquid holding tank and septic system on the Schertz property. Waupaca County defendants Andraschko, Berglund and Kussmann participated in the search along with the state agents. This search, and the consent searches on July 24, 1985, were the only searches of Schertz or his property involving Waupaca defendants.

From August 3 to 22, 1985, a John Doe proceeding was conducted before Judge Kirk to investigate the murder. After hearing the testimony of eleven witnesses (including Schertz) over the course of five days, Judge Kirk determined there was probable cause to believe Schertz had murdered Officer Mork. Judge Kirk then ordered the issuance of a criminal complaint charging Schertz with first degree murder. On August 22, 1985, Judge Kirk issued a warrant for the arrest of Schertz on the murder charge.

On August 27 and 28, 1985, a preliminary hearing was conducted on the murder charge. Schertz was represented at the hearing by his attorney, Thomas O. Schultz. The testimony of 15 witnesses (resulting in 250 pages of transcript), and eight exhibits were produced. Schultz conducted extensive cross examination, which accounted for approximately three-fourths of the testimony. At the conclusion of the preliminary hearing, Judge Kirk determined there was probable cause to bind Schertz over for trial on the charge of first degree murder.

Also on August 28, 1985, a pretrial detention hearing was held following the preliminary hearing. Seven witnesses testified, and each was cross examined by Schultz. The court held, at the conclusion of the hearing, the State had proven by clear and convincing evidence Schertz had committed the murder.

On October 15, 1985 Schertz, through his attorney, once again challenged the sufficiency of the evidence to bind him over for trial for murder. This time, the motion was brought before Circuit Judge Robert Weisel. The judge independently reviewed the transcript of the preliminary hearing. Judge Weisel also determined there was sufficient cause for Schertz to stand trial for murder.

The preliminary hearing on the theft of weapon and misconduct in public office charges was scheduled before Circuit Judge John P. Hoffmann on August 23, 1986. Schertz waived his right to the preliminary, and the court found he had voluntarily and knowingly done so. The court denied defense motions to dismiss the complaint, and found there was probable cause to proceed.

On March 25, 1986, a preliminary hearing was held on the same charges. Judge Hoffmann, following the conclusion of the hearing, found there was probable cause to believe a felony had been committed and the defendant committed it. Subsequent motions to dismiss were denied on April 17, 1986, June 12, 1986, and twice during the July 1986 trial of the charges.

Brief in Support of Waupaca County Defendants' Second Motion for Summary Judgment at 2–7 (citations omitted). Ultimately, on December 12, 1985, a jury found Schertz not guilty of Mork's murder. And on July 11, 1986, another jury found Schertz not guilty of the crimes of theft and misconduct in public office.

The plaintiffs have not disputed any of these facts and the court finds that the defendants' version is supported by the record. However, the plaintiffs have also asked the court to consider their version of the Mork murder investigation:

Immediately following the discovery of the murder of Gerald Mork, the area of the murder in the cemetery was marked by plastic tape but the area was not sealed off, nor was it placed under 24 hour guard until the area had been examined for evidence. While it was clear that Mork was not alive, a rescue squad was called and allowed to enter the pit area, driving over tire tracks and otherwise disturbing the scene. The Sheriff's Department immediately discovered that Mork had blood on the soles of his shoes. This blood on the shoes was never sent to the lab for testing and was lost as evidence. Gerald Mork's squad car was found at the scene of the murder. The interior of the squad car was not checked for fingerprints. Also, it was discovered that there was an area of blood in the back seat of the squad car. The blood was photographed but never checked by the laboratory. A pool of unknown liquid was discovered under the squad car. The liquid was not examined or checked by a laboratory. Finally, at the scene itself, an impression on the ground from an automobile tire was found at the scene of the murder. The tire markings were photographed but no cast was made of the tire impression.

The area where the body of Gerald Mork was found was called the "pit." After the funeral of Gerald Mork, certain bullet fragments were found in this area. Also, an area of blood was observable in the pit area. This blood was never checked or sent to the State Crime Lab.

At the time of the murder, Gerald Mork possessed his own gun. The gun, along with its holster were available at the scene of the murder. The gun and its holster were not checked for prints. Shortly after the murder, a private citizen by the name of Alden Olson found a .380 cartridge case at or near the scene of the murder. Mr. Olson reported his find to the Sheriff's Department and was told by Chief Deputy Andraschko to throw it away as it had no value to the investigation. Finally, one week after the murder, about ¼ mile from the pit area in the cemetery, a private citizen by the name of John Christoph discovered a tent with sleeping gear inside. A person standing in the tent area would have had a clear view of the pit area. Once reported, the area was picked up by the investigation team. The area was not photographed, checked for hair samples, blood, powder residue, or fingerprints

In the course of his duties as Chief of Police of Iola, Plaintiff Schertz maintained a logbook wherein he recorded his activities, such as arrests and reports and crimes. Shortly after the discovery of the murder of Mork, the logbook was seized by the County. The logbook was turned over to District Attorney Maroney. Thereafter, despite demand, the logbook was hidden by Maroney and Tomaselli during the murder trial.

Brief in Opposition to Waupaca County Defendants' Second Motion for Summary Judgment at 1–4 (citations omitted). These statements are supported only by the affidavit of the plaintiff, Michael Schertz, and they do not appear to have been made with first-hand knowledge. *See* Affidavit of Michael Schertz (filed November 4, 1987).

## II. THE COMPLAINT AND PRIOR PROCEEDINGS

Based on these events the plaintiffs assert six claims in their Amended Complaint:

*First Claim:* federal claims arising under 42 U.S.C. §§ 1981, 1983, 1985 and 1988, alleging that the defendants violated and conspired to violate Michael Schertz's rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution;

*Second Claim:* pendent claims arising under state law alleging that the defendants injured Michael Schertz by false arrest, assault and battery, false imprisonment, abuse of process, intentional infliction of emotional distress,

malicious prosecution, negligence and "gross negligence;"

*Third Claim:* alleging that the defendants injured Michael Schertz's reputation by slander and libel;

*Fourth Claim:* alleging that the defendants caused Beverly Schertz to suffer loss of reputation, humiliation, loss of income, emotional and physical pain and suffering, and loss of consortium;

*Fifth Claim:* alleging that defendants Tomaselli and Paetzke executed a search warrant at the Schertz residence without probable cause;

*Sixth Claim:* alleging that defendants Tomaselli and Paetzke committed theft by carrying away the Schertz liquid manure pit without consent.

The defendants answered the Complaint and the Amended Complaint and asserted the affirmative defense that they are immune from suit. In resolving the defendants' first set of dispositive motions based on this immunity defense, this court ruled that:

1. The Waupaca County Defendants in their personal capacities are entitled to qualified immunity from suit on the plaintiffs' claim that county officials conducted a constitutionally infirm investigation of the death of Gerald Mork.

2. The Waupaca County Defendants are immune from suit on all pendent state claims.

3. All constitutional claims predicated upon negligent conduct by the defendants are dismissed.

*See* Decision and Order of March 24, 1987.

### III. LEGAL STANDARDS FOR SUMMARY JUDGMENT

The United States Supreme Court has set forth the following principles to be applied in ruling on a motion for summary judgment:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted). *See also Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir. 1986); *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 496 (7th Cir.1986).

The Court went on to say that "at the summary judgment stage the judge's func-

tion is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, a summary judgment may be granted. The substantive evidentiary standard of proof that would apply at a trial on the merits applies on a motion for summary judgment. *Id.* at 2512. The party having the burden of proof at trial must show that a reasonable jury could proceed to find a verdict in its favor beyond a reasonable doubt, or by clear and convincing evidence, or by a preponderance of the evidence— whichever burden applies to the case. Faced with this evidence, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.*

The Court cautioned that it is not authorizing a trial on affidavits. *Id.* at 2513. The jury, not the judge, must still make credibility determinations, weigh evidence, and draw legitimate inferences from the facts. Moreover, the evidence of the nonmovants is to be believed, and all justifiable inferences are to be drawn in their favor. *Id.*

In *Anderson v. Liberty Lobby*, a libel action, the Court emphasized that, even where intent or motive is at issue, the nonmovant cannot rest on the pleadings, but must present affirmative evidence, even where the evidence is likely to be within the possession of the defendants, as long as the plaintiffs have had a full opportunity to conduct discovery. *Id.* at 2514.

In moving for summary judgment the defendants in this case have submitted the transcripts from the John Doe [3] and probable cause proceedings which were conducted in August of 1985, prior to Schertz's trial for murder, and from a preliminary hearing held on March 25, 1986, prior to Schertz's trial for theft and misconduct in office trial. They have also submitted the affidavits of law enforcement consultant Pierce R. Brooks; of attorneys David T. Flanagan and Philip C. Reid with attached portions of depositions and other documents; and of each the individual defendants. In response, the plaintiffs have offered the affidavits of Michael Schertz and of attorney Alvin Ugent with an attached report from Erik Beckman, designated by the plaintiffs as an expert witness, who offers his opinion of the conduct of the Mork murder investigation.

Throughout much of their response the plaintiffs have failed to grasp that, at this point, they cannot rest on the allegations of their pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir.1977). They have also failed to follow those provisions of Federal

---

**3.** The Wisconsin Statutes provide for the following John Doe proceeding:

If a person complains to a judge that he has reason to believe that a crime has been committed within his jurisdiction, the judge shall examine this complainant under oath and any witnesses produced by him and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. The extent to which the judge may proceed in such examination is within his discretion. The examination may be adjourned and may be secret. Any witness examined under this section may have counsel present at the examination but such counsel shall not be allowed to examine his client, cross-examine other witnesses or argue before the judge. If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint shall be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused. Subject to s. 971.23, the record of such proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used. Wis.Stat. § 968.26 (1985–1986).

Rule of Civil Procedure 56(e) which require that affidavits and other evidence submitted in opposition to summary judgment must set forth facts that would be admissible in evidence and that all allegations must be made from the firsthand knowledge of the affiant and that hearsay can be accorded no weight. *See Pan–Islamic Trade Corporation v. Exxon Corporation*, 632 F.2d 539, 556–58 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981).

## IV. FEDERAL CLAIMS

The substantive law governing the plaintiffs' claims under federal law is found in the amendments to the United States Constitution and the relevant case law. The plaintiffs claim that the defendants deprived Michael Schertz of rights secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments. They also claim that the defendants violated Schertz's "rights" under 42 U.S.C. §§ 1981, 1983, 1985 and 1988. However, these sections of Title 42 do not provide any substantive rights; they only provide remedies. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 615–20, 99 S.Ct. 1905, 1914–17, 60 L.Ed.2d 508 (1979). Therefore, the threshold issue in this case is not whether the defendants have "violated" these statutory sections; it is whether the plaintiffs have stated a cause of action under these sections.

### A. *Section 1981*

■ Section 1981[4] provides a cause of action to a person alleging that he has been discriminated against by a public or private person solely because of ancestry or ethnic characteristics. *See Saint Francis College v. Al–Khazraji*, —— U.S. ——, 107 S.Ct. 2022, 2038, 95 L.Ed.2d 582 (1987). There is no allegation or evidence in the record that Michael Schertz was discriminated against on these bases. Moreover, the record contains no hint as to what Schertz's ancestry

or ethnic characteristics are. *See* Affidavit of Philip C. Reid at Exhibit 8, Plaintiffs' Response to Defendants' First Set of Interrogatories at Response to Interrogatory No. 18 (filed February 2, 1987) (plaintiffs answered "No" when asked to "[s]tate whether you claim to be a member of any racial minority and if your answer is 'yes' specifically identify the minority group to which you allegedly belong"). Accordingly, the court rules that summary judgment will be granted to the defendants on the plaintiffs' claims brought under 42 U.S.C. § 1981.

### B. *Section 1985*

■ Likewise, there is no evidentiary support for any claim the plaintiffs are attempting to bring pursuant to 42 U.S.C. § 1985. Section 1985 contains three subparts. Subsection 1985(1) applies only to a conspiracy to affect the official duties of a federal official. *See Friedman v. Village of Skokie*, 763 F.2d 236, 238 (7th Cir.1985). No such conspiracy is alleged in the Schertz complaint. Any claims brought pursuant to subsections 1985(2) and (3) also fail because these subsections require proof that the defendants acted with class-based animus. *See Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 202–03 (7th Cir.1985). The plaintiffs have not identified any facts which would support a claim that the defendants were motivated in their actions by racial or some other type of invidious, class-based discrimination. *See Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir.1985). Accordingly, summary judgment will be granted to the defendants on the plaintiffs' claims brought under all subsections of 42 U.S.C. § 1985.

### C. *Section 1983*

Except for a request for attorney fees made pursuant to 42 U.S.C. § 1988, the rest of the plaintiffs' federal claims arise

---

**4.** Section 1981 provides as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

under 42 U.S.C. § 1983. To prevail on a claim under section 1983, plaintiffs must show that: (1) they held a constitutionally protected right; (2) they were deprived of this right in violation of the Constitution; (3) the defendants intentionally caused this deprivation; and (4) the defendants acted under color of state law. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988). In affirming a grant of summary judgment in a case arising under section 1983, the Seventh Circuit recently explained that:

> Summary judgment is proper against a party who fails to establish the existence of an element essential to his case, and on which that party will bear the burden of proof at trial. As the Supreme Court recently stated: "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, [477 U.S. 317] 106 S.Ct. 2548, 2553 [91 L.Ed.2d 265] (1986).

*Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988).

1. Claims Under the First, Fifth and Ninth Amendments

■ The plaintiffs have failed to establish the existence of essential elements of their claims that the defendants deprived Michael Schertz of any rights under the First, Fifth and Ninth Amendments to the United States Constitution. There is no allegation or evidence in the record that the defendants deprived Schertz of his right to exercise his religion or that they abridged his freedom to speak, to assemble peaceably, or to redress his grievances. Therefore, the plaintiffs have stated no claim under the First Amendment.

■ While the Fourteenth Amendment incorporates the protections of the Fifth Amendment, federal action is required to state a claim for deprivation of due process directly under the Fifth Amendment. *See O'Donnell v. Village of Downers Grove*, 656 F.Supp. 562, 568 (N.D.Ill.1987). The Schertzes have failed to identify any federal involvement, so they cannot maintain a cause of action directly based on the Fifth Amendment.

■ The Ninth Amendment to the United States Constitution states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The Ninth Amendment is not a substantive source of constitutional guarantees. Instead, the amendment was drafted to cope with the problem created by the enumeration of specific rights in the Bill of Rights. Drafters of the constitution feared that certain rights may have been omitted, so they instituted a savings clause to avoid lowering, degrading or rejecting any rights which are not specifically mentioned. *See O'Donnell v. Village of Downers Grove*, 656 F.Supp. 562, 569 (N.D.Ill.1987); *Grossman v. Gilchrist*, 519 F.Supp. 173, 176 (N.D.Ill.1981), *aff'd*, 676 F.2d 701 (7th Cir. 1982). *See also Strandberg v. City of Helena*, 791 F.2d 744, 748–49 (9th Cir.1986); *Quilici v. Village of Morton Grove*, 695 F.2d 261, 271 (7th Cir.1982), *cert. denied*, 464 U.S. 863, 104 S.Ct. 194, 78 L.Ed.2d 170 (1983). The plaintiffs have failed to identify any fundamental right implicitly guaranteed by the Ninth Amendment which the defendants abridged. Therefore, they cannot maintain any claim under the Ninth Amendment.

In sum, the plaintiffs have not succeeded in establishing essential elements of their claims that they were deprived of rights secured by the First, Fifth and Ninth Amendments. Consequently, summary judgment will be granted in favor of the defendants on these claims.

2. Claims Under the Fourth and Fourteenth Amendments

The remainder of First Claim of the Amended Complaint alleges deprivation of Michael Schertz's constitutionally protected rights to be free from unreasonable searches and seizures and to be accorded due process. *See* U.S. Const. Amends. IV & XIV. The plaintiffs claim that the individual defendants conducted and conspired to conduct the Mork murder investigation in a "grossly negligent" or "intentional,

malicious and biased"[5] manner; that the defendants conspired to provide false information to the news media; that defendant Tomaselli concealed and conspired to conceal evidence from Schertz and his attorney; and that Schertz was searched, arrested, charged and tried for murder, theft and misconduct in office unreasonably and without probable cause. This fusillade of claims has been aimed at Waupaca County and against the individual County and State Defendants in their personal and official capacities without much effort at specifying who is supposed to have done what.[6]

### (a) Claims Against Waupaca County

Although Waupaca County is named as a defendant, the Amended Complaint fails to state any specific claim against the County. Yet, in their brief, the plaintiffs explain that:

> In the present case, Plaintiffs contend in paragraph 15 of its Amended Complaint that Defendant William Mork, Sheriff of Waupaca County, is an elected official who establishes governmental policy for the County. In that capacity, Defendant Mork's intentional wrongdoing was, in part, based on his decisions regarding the course and scope of the murder investigation, and therefore, Waupaca County can be held equally responsible according to *Pembaur [v. City of Cincinnati,* 475 U.S. 469 [106 S.Ct. 1292, 89 L.Ed.2d 452] (1986)].

> Finally, although Thomas Maroney, District Attorney for Waupaca County, has been dismissed from the case due to prosecutorial immunity considerations, that does not mean that Waupaca County is automatically insulated from liability for his conduct. As an elected County

official, the prosecution of the Plaintiff was his domain. Any conduct causing any constitutional deprivations by District Attorney Maroney will, due to *Pembaur,* hold Waupaca County liable.

Brief in Opposition to Waupaca County Defendants' Second Motion for Summary Judgment at 16–17 (citation omitted). The Waupaca County Defendants argue that summary judgment should be granted on all claims against the County because there is no allegation or evidence that a custom or policy of the County caused any violation of Schertz's constitutional rights.

The United States Supreme Court has expressly held that local governments are among the "persons" to whom section 1983 applies. *See Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed. 2d 611 (1978). There are three basic elements necessary for local government liability. There must be: (1) deprivation of a constitutional right; (2) a municipal policy or custom; and (3) a showing that the deprivation was caused by the policy or custom. *See Powe v. City of Chicago,* 664 F.2d 639, 643 (7th Cir.1981); *Thompson v. County of Rock,* 648 F.Supp. 861, 865 (W.D.Wis.1986). A local government cannot be held liable on a respondeat basis, but the entity can be held liable for acts of its officials which are carried out pursuant to a formal or informal custom or policy. *See generally City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion). *See also Sherrod v. Berry,* 827 F.2d 195, 206 (7th Cir.1987). As the defendants point out, the plaintiffs in this case have identified no policy or custom of Waupaca County which caused their injuries. The

---

**5.** Although a plaintiff must prove more than mere negligence to prevail on a claim under section 1983, a party's characterization of behavior as negligent, reckless, or intentional is frequently unhelpful in determining whether a constitutional violation has occurred. Therefore, the substance of the claims rather than their form must be considered. *See Kolpak v. Bell,* 619 F.Supp. 359, 380 (N.D.Ill.1985).

**6.** The State Defendants have identified eleven constitutional claims within the plaintiffs' First Claim: false arrest, negligent investigation, ma-

licious prosecution for murder, false imprisonment, abusive incarceration, denial of bail, leaking of information, withholding exculpatory evidence, malicious prosecution for theft and misconduct, denial of contract rights and conspiracy. *See* Brief in Support of Second Motion for Summary Judgment at 15. The plaintiffs' non-specific manner of presenting their allegations has greatly complicated the court's task of analysis. *Cf. Trotter v. City of Chicago,* 573 F.Supp. 1269, 1274 (N.D.Ill.1983).

Schertzes have presented no evidence of anyone else whose constitutional rights have been abused, so no reasonable inference can be drawn that Waupaca County followed a pattern and practice of searching, seizing, and prosecuting citizens without probable cause or that the County routinely conducted infirm crime investigations. *See Anderson v. City of New York,* 657 F.Supp. 1571, 1574 (S.D.N.Y.1987) ("Plaintiff cannot infer a policy from the alleged violation of his own civil rights").

■ A county can also be held liable for a single decision (or course of action chosen from among various alternatives) by a policymaking official. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 477–85, 106 S.Ct. 1292, 1297–1301, 89 L.Ed.2d 452 (1986) (plurality opinion). The Schertzes are attempting to impose liability on Waupaca County under this theory. However, the United States Supreme Court has recently reiterated that "the identification of policymaking officials is a question of state law." *St. Louis v. Praprotnik,* — U.S. —, —, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality opinion). Under Wisconsin law neither a sheriff nor a district attorney is a "policymaking official" of a county. *See Soderbeck v. Burnett County, Wisconsin,* 821 F.2d 446, 451–52 (7th Cir.1987) (sheriff not a county policymaker); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1272 (7th Cir.1984) (county not liable for acts of district attorney). Consequently, Waupaca County cannot be liable to the plaintiffs for the alleged decisions of Sheriff Mork or District Attorney Maroney, so the court will grant summary judgment in favor of the defendants on all claims against the County.

### (b) Claims Against the Individual Defendants In Their Official Capacities

Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). An official-capacity suit is not a suit against the official as an individual; the real party in interest is the entity. *See Wilson v. Civil Town of Clayton, Indiana,* 839 F.2d 375, 382 (7th Cir.1988). The United States Supreme Court has noted that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* local governmental units can be sued directly for damages." *Kentucky v. Graham,* 105 S.Ct. at 3106 n. 14 (1985).

■ If, as here, defendants are sued in their official capacities, exactly the same principles apply to a claim against a local official in his official capacity as apply to the local government itself. Liability results only if it could also be imposed against the entity. *See Williams v. City of Chicago,* 658 F.Supp. 147, 153 (N.D.Ill. 1987). Thus, because the court has ruled that no liability can be imposed on Waupaca County, the individual Waupaca County Defendants cannot be held liable for money damages in their official capacities.

■ The State Defendants cannot be held liable for damages in their official capacities either, because the Eleventh Amendment bars a suit for money damages against state employees in their official capacities if the state is the real party in interest.[7] *See Giancola v. State of West Virginia Department of Public Safety,* 830 F.2d 547, 552 (4th Cir.1987); *Brunken v. Lance,* 799 F.2d 337, 340–41 (7th Cir. 1986). The state is the real defendant if the relief requested would intrude on the state's sovereignty. Where, as here, a monetary award is sought, the relief does more than merely intrude on the state's sovereignty. Such an award is tantamount to a "raid on the state treasury." *Milliken v. Bradley,* 433 U.S. 267, 290 n. 22, 97 S.Ct. 2749, 2762 n. 22, 53 L.Ed.2d 745 (1977). A judgment against a public servant in his official capacity imposes liability on the

---

7. The State Defendants belatedly raised the defense of Eleventh Amendment immunity in their motion for summary judgment. However, because a defense under the Eleventh Amendment is in the nature of a jurisdictional defense, it can be raised at any time. *See Granados v. Reivitz,* 776 F.2d 180, 182–83 (7th Cir.1985).

entity that he represents. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 887, 83 L.Ed.2d 878 (1985). Therefore, a suit against a state employee in his official capacity will be barred by the Eleventh Amendment if it leads to an imposition of monetary liability upon the state. Because this is the situation presented in the instant case, the plaintiffs are barred from maintaining their claims for money damages against defendants Tomaselli and Paetzke in their official capacities.[8]

### *(c) Claims Against the Individual Defendants In Their Personal Capacities*

The defendants argue that summary judgment should be granted in their favor on all the remaining section 1983 claims brought against them in their personal capacities because they are immune from suit for these claims and because the plaintiffs should be precluded from relitigating the issues of whether there was probable cause to search, arrest, detain and prosecute Schertz. The defendants asserted the qualified immunity defense in their answers and, to a limited extent, in their initial motions for summary judgment. In resolving these initial motions, the court ruled that the Waupaca County Defendants were immune from suit for the claims that they conducted a constitutionally infirm investigation of Mork's murder. *See* Decision and Order of March 24, 1987.

The court delayed ruling on whether the plaintiffs are barred from relitigating the issue of probable cause. Instead, the plaintiffs were given additional time for discovery to support their contention that

Schertz did not have a full and fair opportunity to contest probable cause in the state courts. Now that discovery has been completed, the plaintiffs have not presented any new facts, but have continued to rely on their theory that the probable cause determinations were infirm because the murder investigation was infirm. Although the court has already addressed the investigation issue, it will reexamine this issue in view of the completed record and additional arguments of the parties. *See* Federal Rule of Civil Procedure 54(b).

INVESTIGATION, ARREST, SEARCH, PROSECUTION, DETENTION

The existence of probable cause is an absolute bar to a section 1983 claim arising out of a search, seizure, detention or prosecution regardless of the lack of good faith or malicious motives on the part of the law enforcement officers. *See Bergren v. City of Milwaukee,* 811 F.2d 1139, 1142 (7th Cir.1987); *Kompare v. Stein,* 801 F.2d 883, 891 (7th Cir.1986); *Williams v. Kobel,* 789 F.2d 463, 470 (7th Cir.1986); *Lenard v. Argento,* 699 F.2d 874, 884 (7th Cir.), cert. denied, 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed. 2d 84 (1983); *Terket v. Lund,* 623 F.2d 29, 31 (7th Cir.1980). Likewise, a claim for failure to conduct an adequate investigation will be barred because "law enforcement officials have no constitutional duty to keep investigating a crime once they have established probable cause."[9] *Kompare v. Stein,* 801 F.2d at 890. *See also Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) ("Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest war-

---

**8.** No injunctive or declaratory relief is sought by the Schertzes. *Cf. Akins v. Board of Governors of State Colleges and Universities,* 840 F.2d 1371, 1375–78 (7th Cir.1988).

**9.** The Seventh Circuit has held that "an officer who has established cause on every element of the crime need not continue investigating to check out leads or test the suspect's claim of innocence." *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986). The court has also concluded that:

> [T]he police need not automatically interview available witnesses, on pain of the risk that a jury will require them to pay damages. Good

police practice may require interviews, but the Constitution does not require police to follow the best recommended practices. There is a gap, often a wide one, between the wise and the compulsory. To collapse those two concepts is to put the judicial branch in general superintendence of the daily operation of government, which neither the fourth amendment nor any other part of the Constitution contemplates.

*Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 442 (7th Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987).

rant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and jury.").

■ It is important to note that Schertz's eventual acquittal on all charges does not establish that the defendants lacked probable cause to arrest, search, detain and prosecute. *See Kompare v. Stein,* 801 F.2d 883, 891 (7th Cir.1986). The state's failure to prove guilt beyond a reasonable doubt does not mean that it did not meet the lesser probable cause standard—a reasonable belief that an offense has been committed and that the criminal defendant committed the crime. *See Williams v. Kobel,* 789 F.2d 463, 470 (7th Cir.1986). As the Supreme Court has explained: "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

In this case there were judicial determinations of probable cause to search, seize and detain Schertz and to bind him over for trial on charges of murder, theft, and misconduct in office. *See State v. Schertz,* No. 86-CF-4 (Waupaca County Circuit Court March 25, 1986) (transcript of preliminary hearing); *State v. Schertz,* No. 85-CF-84 (Waupaca County Circuit Court August 27 & 28, 1985) (transcript of preliminary hearing); *State v. John Doe,* (Waupaca County Circuit Court August 3-22, 1985) (transcript of proceedings); Affidavit of Philip C. Reid at Exhibit 9 (filed February 2, 1987) (search warrant for certain property owned by Michael Schertz, dated August 3, 1985, and signed by Judge Philip M. Kirk).

■ The evidence and testimony offered at the John Doe proceeding and preliminary hearings [10] established probable cause to believe that Schertz had the means, motive and opportunity to commit first degree murder.[11]

It is undisputed that Waupaca County Deputy Sheriff James Kneisler found Gerald Mork dead in the Riverside Cemetery at approximately 4:45 A.M. on July 14, 1985. *See State v. Schertz,* No. 85-CF-84 (Waupaca County Circuit Court August 27, 1985) (Transcript at 77-81, testimony of James Kneisler). An autopsy revealed that Mork had been shot twice in the head. *See Id.* (Transcript at 137-39, testimony of Dr. Peter C. Hamel). The Wisconsin Crime Laboratory Bureau determined that two cartridges found at the scene were Remington Brand, .380 auto pistol caliber fired cartridge cases. The bullet fragments and cartridge cases found at the scene were consistent with having been fired from an Italian Beretta, Model 1934, .380 auto pistol caliber, semi automatic pistol. *See Id.* at Exhibit 3.

Frances Hayden testified that, three years earlier, Schertz had removed two handguns, including a Beretta, from the tavern she operated with her husband. *See Id.* (Transcript at 70-76, testimony of Frances Hayden). The guns were not returned to the Haydens, but former Iola police officer Robert Clark testified that he saw two handguns in the Iola police department's evidence locker with the name "Russ Hay-

---

**10.** Probable cause for the arrest of Schertz and for the search of the Schertz land and buildings was found by Waupaca County Circuit Judge Philip Kirk following a John Doe proceeding, while probable cause to bind over for trial on the murder charge was found at an August 27 & 28, 1985 preliminary hearing. The evidence and testimony received at both proceedings was substantially the same, so this opinion cites only the transcript of the preliminary hearing.

**11.** Section 940.01 of the Wisconsin Statutes (first-degree murder) provides that:

(1) Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

(2) In this chapter "intent to kill" means the mental purpose to take the life of another human being.

den" attached in June of 1984. *See Id.* (Transcript at 200–01, testimony of Robert Clark).

Harold Bucholz, president of the Village of Iola, testified that Schertz had not wanted the Village to hire Mork and that Schertz had waged a campaign to have him removed from the job. *See Id.* (Transcript at 160–70, testimony of Harold Bucholz). Others, including Roger D. Miller, part time Chief of Police for the Township of St. Lawrence, related that Schertz had made threats against Mork. *See Id.* (Transcript at 181, testimony of Roger D. Miller).

Finally, witness Thomas Doerr testified that he and some friends were sitting on a park bench on Main Street in Iola at approximately 4:00 A.M. on the morning of July 14, 1985, when he saw an Iola squad car pass by headed in the direction of Riverside Cemetery. A few minutes later, he saw a second squad car [12] pass by going in the same direction. After approximately five minutes had passed, Doerr heard a sound which sounded like a gunshot. Minutes later Doerr observed the second squad car returning on Main Street. Doerr waved to the driver whom he later identified as Schertz. *See Id.* (Transcript at 226–59, testimony of Thomas Doerr).

Based on this circumstantial evidence, the Waupaca County court found that the state had established a reasonable probability that a murder had been committed and that Schertz had committed it. *See generally State v. Dunn,* 121 Wis.2d 389, 397–98, 359 N.W.2d 151, 155 (1984) ("focus of the judge at a preliminary hearing is to

ascertain whether the facts and the reasonable inferences drawn therefrom support the conclusion that the defendant committed a felony"). Therefore, Schertz was bound over for trial.

At the conclusion of the preliminary hearing the state moved, pursuant to section 969.035 of the Wisconsin Statutes, for an order denying bail. In support of this motion Robert Andraschko, Chief Deputy of the Waupaca County Sheriffs' Department, testified that on the day following Mork's murder he had ordered Schertz to take no part in the investigation. *See State v. Schertz,* No. 85–CF–84 (Waupaca County Circuit Court August 27 & 28, 1985) (Transcript at 259, testimony of Robert Andraschko). Yet, Kirby Linjer, Penny Wolberg, Jill Ann Mortenson and Michael Wolberg testified that Schertz had interviewed them concerning the murder— sometimes at odd hours. *See Id.* (Transcript at 262–80, testimony of Kirby Linjer, Penny Wolberg, Jill Ann Mortenson and Michael John Wolberg). Deputy Andraschko stated that Schertz had submitted no reports of these interviews. *See Id.* (Transcript at 281–82, testimony of Robert Andraschko). Based on this testimony, the court found that available conditions of release would not adequately prevent the intimidation of witnesses. *See* Wis.Stat. § 969.035(3)(c). Therefore, the judge denied bail and ordered Schertz to be incarcerated prior to trial.

Likewise, after Schertz was charged with theft of a firearm [13] and misconduct in office,[14] testimony at the preliminary hearing

---

**12.** At this time the Village of Iola maintained a two-person police force.

**13.** Section 943.20(1)(a) & (3)(d)(5) of the Wisconsin Statutes (theft) provides that:

(1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):
(a) Intentionally takes and carries away, uses, transfers, conceals or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property.
. . . .
(3) PENALTIES. Whoever violates this section:
. . . .

(d) If the value of the property does not exceed $2,500 and any of the following circumstances exist, is guilty of a Class D felony:
. . . .
5. The property is a firearm.

**14.** Section 946.12(2) of the Wisconsin Statutes (misconduct in public office) provides that:
Any public officer or public employe who does any of the following is guilty of a Class E felony:
. . . .
(2) In his capacity as such officer or employe, does an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity;

established that Schertz intentionally transferred the handguns from the Haydens' establishment without their consent and that these guns were not returned to the Haydens. *See State v. Schertz*, No. 86–CF–4 (Waupaca County Circuit Court March 25, 1986) (Transcript at 7–8, testimony of Frances Hayden); *Id.* (Transcript at 21–32, testimony of Robert Clark). The prosecution also established that, while Schertz was a police chief of the Village of Iola, he intentionally acted in excess of his lawful authority by removing the Hayden handguns from the custody and control of the Iola police department. *See Id.* (Transcript at 32–47, testimony of Louis Tomaselli). Based on this evidence, the court found that there was probable cause to believe that Schertz had committed the felonies of theft of a firearm and misconduct in office.

The defendants contend that these findings collaterally estop the plaintiffs from relitigating the issue of probable cause in this court. In general, a federal court must give the same preclusive effect to a state court ruling as would a court in the rendering state. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Therefore, Wisconsin preclusion law applies to this case. Wisconsin courts do not require mutuality of parties where collateral estoppel is "asserted defensively to prevent a party from relitigating an issue which has been conclusively resolved against that party in a prior case." *Crowall v. Heritage Mutual Insurance Company,* 118 Wis.2d 120, 125, 346 N.W.2d 327, 330 (Ct.App.1984). Wisconsin gives preclusive effect to state court determinations on issues that were: (1) identical; (2) actually litigated; and (3) necessary to the state court's decision. *See Kichefski v. American Family Mutual Insurance Company,* 132 Wis.2d 74, 78–80, 390 N.W.2d 76, 78–79 (Ct.App.1986); *Landess v. Schmidt,* 115 Wis.2d 186, 197–205, 340 N.W.2d 213, 218–22 (Ct.App.1983). In addition, the party being precluded must have had a full and fair opportunity—procedurally, substantively, and evidentially—to relitigate his claim in the first proceeding.

*See Crowall,* 118 Wis.2d at 126, 346 N.W.2d at 331.

During the preliminary hearings in question, Schertz, who was represented by counsel, was allowed to testify, present evidence and cross examine witnesses. The plaintiffs do not claim that they were not afforded a full and fair procedural opportunity to contest the issue of probable cause at these hearings and they do not appear to be contesting the sufficiency of the evidence. Rather, they are contesting the integrity of the evidence by arguing that the hearings were unfair because the evidence presented was the result of the recklessly negligent investigation by the defendants.

In their affidavits the defendants allege that they did not ignore evidence which would have exculpated Schertz nor did they withhold any relevant evidence. *See* Affidavit of Dennis A. Kussmann at ¶ 12 (filed February 2, 1987); Affidavit of Larry Jensen at ¶ 10 (filed February 2, 1987); Affidavit of Robert Andraschko at ¶¶ 9 & 10 (filed February 2, 1987); Affidavit of Donald Berglund at ¶¶ 9 & 10 (filed February 2, 1987); Affidavit of Louis Tomaselli (filed February 2, 1987); Affidavit of Carl Paetzke at ¶ 12 (filed February 2, 1987).

The plaintiffs have tried to dispute these allegations by submitting the affidavit of Michael Schertz and a report from their expert, Dr. Erik Beckman, who says that, based on a personal meeting with Michael Schertz and a review of a number of documents, he has concluded that numerous professional errors were made in the investigation of the Mork murder. *See* Affidavit of Michael Schertz (filed November 4, 1987); Affidavit of Alvin R. Ugent at ¶ 4 & Exhibit (filed November 20, 1987). At his deposition Beckman stated that these errors of omission and commission include: failure to seal off and guard the crime area; failure to examine bullet fragments and blood found near the crime scene; failure to make casts of tire impressions found near the crime scene; failure to investigate a cartridge found at the scene; failure to process the interior of Mork's police car; failure to check Mork's gun and holster for firing and fingerprints; failure to analyze

blood found in the back seat of the police vehicle and liquid found under the vehicle; failure to process items picked up from the vicinity of a tent found within view of the crime scene; failure to analyze blood or clothing found on the victim; and failure to question a motorcyclist who had been in the area. Beckman also says that the preliminary proceedings were tainted because those connected with the investigation threatened a witness and gave out false information to the media. At his deposition Beckman testified that agent Tomaselli swore in support of the murder complaint that "the suspect murdered the victim with a Beretta," when the state crime laboratory had not excluded other types of guns as the possible murder weapon.

At the same deposition, when asked to enumerate any exculpatory evidence which was disregarded during the investigation, Beckman answered:

> I'm not sure anybody will ever know because so much was uncollected. That's largely an unknown. Who knows what might have been exculpatory if the crime scene had been processed properly and the follow-up investigation had been conducted properly. I don't. I don't think we'll ever know that.

*See* Affidavit of Alvin R. Ugent at ¶ 4 & Exhibit (filed November 20, 1987). Beckman then speculated that questioning members of various motorcycle gangs or looking into the possibility that a gun other than the Beretta in question was the murder weapon could have lead to the discovery of exculpatory evidence. In Beckman's opinion, the investigatory errors were made knowingly and intentionally. He believes that "personal motivations may have been behind these proceedings against Mr. Schertz, given the total lack of adherence to professional standards." *See Id.*

 As the defendants point out, Beckman's list of errors and ultimate opinions are not the product of visiting the crime scene or of inspecting any of the physical evidence or of interviewing witnesses. Moreover, his conclusion that the defendants acted to violate Schertz's rights in a knowing and intentional manner is an inadmissible conclusion of law. *See Taylor v. Watters,* 655 F.Supp. 801, 805 (E.D.Mich. 1987). Similarly, his conclusion that personal motivations might be responsible for the alleged lack of professional standards is sheer speculation supported by no facts in the record. It appears that Beckman obtained many of his underlying "facts" from plaintiff Schertz whose own affidavit is partially predicated on information and belief and, to that extent, is inadmissible. *See Friedel v. City of Madison,* 832 F.2d 965, 969–70 (7th Cir.1987); *Peffley v. Durakool, Inc.,* 669 F.Supp. 1453, 1460–61 (N.D. Ind.1987). The plaintiffs have offered no evidence of any personal involvement of defendants Kussmann and Berglund in any of the acts of commission or omission. Beckman only says that Andraschko and Tomaselli were definitely involved and that "possibly" defendants Paetzke and Sheriff Mork were also involved. *See* Affidavit of Alvin R. Ugent at ¶ 5 & Exhibit (filed November 20, 1987). However, no evidence is offered showing any involvement of Paetzke or Mork and there is no evidence refuting Sheriff Mork's allegation that he decided not to participate in the investigation because the victim was his son. *See* Affidavit of William Mork at ¶¶ 5, 13 & 14 (filed February 2, 1987).

Although the plaintiffs' expert witness contradicts the defendants' assertions that they did not fail to investigate any relevant evidence or witnesses, this dispute is not necessarily material under the governing law. But before assessing materiality, the court must determine whether, under Wisconsin law, the plaintiffs are estopped from relitigating the issue of probable cause when they are challenging the integrity of the evidence presented at the pretrial hearings.

In *Guenther v. Holmgreen,* the Seventh Circuit, ruling on a section 1983 case arising in Wisconsin, held that a Fourth Amendment claim for false arrest was precluded by the state court's determination of that issue at a state criminal preliminary hearing during which the plaintiff was able to thoroughly litigate and challenge the issue of probable cause. *See Guenther v.*

*Holmgreen,* 738 F.2d 879, 883–87 (7th Cir. 1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985). The court observed that, while a Wisconsin preliminary hearing is typically a summary proceeding designed to determine whether there is sufficient evidence to establish a reasonable probability that a defendant has committed a crime, Guenther had requested and received a much more extensive and probing hearing than that required by Wisconsin law or the Fourth Amendment. Just like Schertz, Guenther was represented by counsel and was permitted to cross examine witnesses and offer his own evidence. *Id.* at 885–86. Because the preliminary hearing was adversarial, the court concluded that Guenther had been afforded a full and fair opportunity to challenge the integrity of the evidence. *Id.* at 884–86.

By contrast, in a case arising in Indiana, the Seventh Circuit held that a person is not collaterally estopped from bringing a section 1983 action challenging the integrity of the evidence that was presented at a probable cause hearing. *See Bailey v. Andrews,* 811 F.2d 366, 370 (7th Cir.1987). The court noted that the probable cause proceeding in question was an *ex parte* hearing at which the arresting officer was not required to appear. Furthermore, the arrestee was never tried on the charge, so he had no opportunity to contest the foundation for his arrest at trial. The court refused to apply collateral estoppel because the issue in the probable cause hearing— the sufficiency of the evidence—was not the same as the issue being raised in the section 1983 action—the integrity of the evidence. *Id.* at 369–70.

The Wisconsin Supreme Court has set forth a standard for making determinations of probable cause at preliminary hearings (held pursuant to section 970.03 of the Wisconsin Statutes) whereby the judicial officer must not delve into the credibility (as opposed to the plausibility) of a witness' testimony; may not choose between conflicting facts or inferences; and may not weigh the state's evidence against evidence favorable to the defendant. *See State v. Dunn,* 121 Wis.2d 389, 397–98, 359 N.W.2d 151, 154–55 (1984). In making his finding

of probable cause to bind Schertz over for trial on the murder charge, the state judge announced that he was following the *Dunn* standard. Thus, it is not clear that a challenge to the integrity of the evidence would have been of any avail.

■ It appears that, under *Dunn,* a determination of the integrity of the evidence was not necessary to the decisions finding probable cause in the *Schertz* cases. Therefore the plaintiffs are not precluded from litigating the issue in this action. However, bare allegations attacking the integrity of the evidence do not vitiate a probable cause finding.

When civil rights plaintiffs challenge the truthfulness of evidence and testimony underlying a judicial determination of probable cause in a prior criminal proceeding, courts use the test established in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to evaluate the validity of the search or arrest warrant. *See, e.g., Perlman v. City of Chicago,* 801 F.2d 262, 264 (7th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987); *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 440 (7th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987); *Guenther v. Holmgreen,* 738 F.2d 879, 884–85 (7th Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985); *Jones v. Town of Seaford, Delaware,* 661 F.Supp. 864, 872–75 (D.Del.1987). *Franks* established the proposition that the Fourth Amendment requires police officer affiants to exclude knowing and intentional or reckless falsehoods from affidavits. In *Franks,* the Supreme Court held that a criminal defendant may, upon substantial preliminary showing, challenge the validity of a search warrant on the ground that the affiant included in the underlying affidavit deliberate or recklessly made falsehoods concerning material facts necessary to the determination of probable cause. *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676. Under *Franks,* if the defendant establishes falsity by a preponderance of the evidence, the false statements will be stricken from the affidavit. *Id.* The court must then determine wheth-

er the information remaining in the affidavit is sufficient to support a finding of probable cause.

■ In this case the only statement the plaintiffs challenge as untruthful is an allegation in support of the warrant to arrest Schertz for murder which they say was made by agent Tomaselli. Their expert, Erik Beckman, testified that, according to his research, Tomaselli alleged, without qualification, that the murder weapon was a Beretta. *See* Affidavit of Alvin R. Ugent at ¶ 4 & Exhibit (filed November 20, 1987). The plaintiffs repeat this charge in their brief. *See* Brief in Opposition to Defendants Tomaselli and Paetzke's Second Motion for Summary Judgment at 9. However, a review of the record shows that Tomaselli made no such statement. In his affidavit Tomaselli alleged that: "The [state crime laboratory] report states that further analysis of the firearm class characteristics on the cartridge cases and bullet, Items A and B and Q, revealed that they were consistent with having been fired in and from an Italian Beretta, Model 1934, 380 auto pistol caliber, semi-automatic pistol." Affidavit of Philip C. Reid at Exhibit 2 (filed February 2, 1987) (criminal complaint charging Michael Schertz with first degree murder). Saying that the ammunition is "consistent with" having been fired from a certain type of gun does not rule out the possibility that another type could have been used to fire the ammunition. The record shows that there is no substance to the plaintiffs' claim that Tomaselli made a false allegation in support of a warrant. If any statement is misleading, it is Dr. Beckman's.

The plaintiffs do not challenge the truthfulness of any of the other evidence or testimony which actually was received at the hearings. Instead, they claim that a more thorough investigation would have led to the discovery of evidence which would have exculpated Schertz from the beginning.

■ The *Franks* rationale applies with equal force where law enforcement officers secure warrants through the intentional or reckless omission of material facts. *See Olson v. Tyler,* 771 F.2d 277, 281 n. 5 (7th Cir.1985), *aff'd,* 825 F.2d 1116 (7th Cir. 1987).[15] However, when a party challenges a warrant on the basis of information not brought to the attention of the authorizing judge which, the party claims, tends to negate the existence of probable cause, the challenging party must make a substantial offer of proof, supported by affidavits from reliable witnesses or other competent evidence, that there were material facts which were omitted. In addition, there must be a substantial showing that the omissions were intentional or reckless. *See United States v. Dorfman,* 542 F.Supp. 345, 365–84 (N.D.Ill.) *aff'd sub nom. United States v. Williams,* 737 F.2d 594, 602–04 (7th Cir.1982), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). In order to present a viable issue under *Franks,* the challenger's attack must present something more than mere conclusory allegations. *See Jones v. Town of Seaford, Delaware,* 661 F.Supp. 864, 874 (D.Del.1987).

This is not the typical situation where a plaintiff is able to point to specific information which would have precluded his arrest had it been brought to the attention of the judicial officer, as where the authorities (or their computer) have misidentified an arrestee. *See, e.g., Patton v. Przybylski,* 822 F.2d 697 (7th Cir.1987); *Rogan v. City of Los Angeles,* 668 F.Supp. 1384 (C.D.Cal. 1987). And it is not a situation where the

---

**15.** In *Olson v. Tyler,* where a false arrest claim was at issue, the Seventh Circuit noted that: We ... need not decide the question whether a § 1983 plaintiff must prove, in order to recover damages, that a particular omission from a warrant application would have vitiated probable cause. It is at least arguable that, even if a court later determines that the omission did not undermine the probable cause determination, an officer who knowingly (or recklessly) omits facts that a reasonable officer would have provided in the warrant application may thereby violate the arrestee's civil rights.

In this case the plaintiffs have not identified any rights which arguably could have been violated if the court determines that there was probable cause for the arrests, searches, detentions and prosecutions.

authorities should have known that the arrestee could not have been at the crime scene. *See, e.g., Olson v. Tyler,* 771 F.2d 277 (7th Cir.1985), *aff'd,* 825 F.2d 1116 (7th Cir.1987). In the *Schertz* case the plaintiffs' expert has admitted that he does not know of any specific evidence which would have exonerated Schertz; he only contends that the evidence is "out there."

Unable to identify specific exculpatory evidence which should have been presented to the judicial officers issuing the search and arrest warrants, Michael Schertz has, instead, listed a number of suspicious findings or leads which he believes the investigators should have pursued.[16] In his affidavit he alleges that:

3. On July 14, 1985, in his capacity as Police Chief, he inspected the area of the murder of Gerald Mork.

4. Since that time, he has reviewed and examined documents relating to the investigation of the murder of Gerald Mork. Upon information and belief, the tire marks were photographed but no cast was made of the tire impressions.

5. The area of the murder was marked by plastic tape. It was not sealed off or placed under 24 hour guard until the area had been examined for evidence.

6. On July 14, 1985, a rescue squad entered the area of the murder, driving over tire tracks he observed.

7. Gerald Mork had blood on the soles of his shoes. Upon information and belief, the blood was never tested and was lost as evidence.

8. Mork's squad car was found at the scene of the murder. There was an area of blood in the back seat of the squad car. Upon information and belief, the blood was photographed but never tested, and the interior of the squad car was not checked for fingerprints.

9. A pool of liquid was discovered under Mork's squad car. Upon information and belief, the liquid was not examined.

10. Upon information and belief, the gun and holster of Gerald Mork were not checked for fingerprints.

11. Alden Olson, a private citizen, found a .380 cartridge case near the scene of the murder. Mr. Olson reported the find to the Waupaca County Sheriff's Department and was told by Chief Deputy Andraschko to throw the cartridge case away since it had no value to the investigation.

12. Approximately one week after the murder, John Christoph, a private citizen, discovered a tent with sleeping gear inside near the murder site. Upon information and belief, the team investigating the murder did not photograph the area or check for hair samples, blood, gun powder residue or fingerprints.

Affidavit of Michael Schertz at ¶¶ 3–12 (filed November 4, 1987).

Any inference that these leads could have yielded exculpatory evidence would be pure speculation.[17] The court can only consider the information the plaintiffs have provided. Thus, the question becomes whether the plaintiffs have made a substantial showing that this omitted information is material in that it would have negated the state courts' findings of probable

---

**16.** These are the same "facts" the plaintiffs' expert used as the basis for his opinions which are discussed on pages 35–36 above. *See* Affidavit of Alvin R. Ugent at ¶ 4 & Exhibit (filed November 4, 1987).

It is interesting to note that the record suggests that Michael Schertz himself did not follow up on every lead provided by citizens. *See, e.g., State v. John Doe* (Waupaca County Circuit Court August 3–22, 1985) (Transcript at 43–44, testimony of Roger Miller).

**17.** Moreover, the defendants have explanations for many of these investigatory "omissions."

For example, Chief Deputy Sheriff Andraschko says that two weeks after Mork's death, officers returned to the Riverside Cemetery to fire shots from .038 caliber revolvers to determine whether witnesses could have heard the shots. After the test, all cartridges but one were located. Hours later Alden Olson reported finding a spent cartridge in the area in which the test was conducted. Andraschko was certain that it was the missing test cartridge, so he told Olson to dispose of it. *See* Supplemental Affidavit of Robert Andraschko (filed March 16, 1987).

cause.[18]

■ As explained above, evidence presented at the John Doe and preliminary hearings established a reasonable probability that Schertz had the means (guns taken from the Haydens), motive (employment-related friction with Mork), and opportunity (spotted in the vicinity of Mork at the time of death) to murder Gerald Mork. Likewise, at the preliminary hearing on the theft and misconduct charges, evidence established a reasonable probability that Schertz had retained possession of the Hayden guns without the consent of the Haydens and that he had removed these guns from the custody and control of the Iola police department. None of the allegedly unexamined evidence the plaintiffs claim was found at the crime scene would negate or modify the courts' findings on any of these elements unless it implicated a third person. However, the plaintiffs have presented no factual basis from which the court could draw a reasonable inference that the defendants should have suspected a third person. Any such inference would

be pure speculation.[19] There is no evidence that reasonably well-trained law enforcement officials in the defendants' position would have known that their investigation failed to establish probable cause and created an unnecessary danger of an unlawful arrest. *See Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). Even when the plaintiffs' quarrels with the scope of the investigation are considered along with the unchallenged evidence which actually was presented at the hearings, the court finds that the integrity of the evidence has not been vitiated and that there was sufficient plausible evidence to establish probable cause on each element of each crime as a matter of law.[20]

■ This finding of probable cause bars the plaintiffs' constitutional claims based on the investigation, arrests, searches, detentions and prosecutions[21] of Schertz for the crimes of first degree murder, theft of a firearm and misconduct in office as a matter of law.[22] Therefore, summary judgment will be granted in favor of the defendants on these claims.

**18.** Although the *Franks* test requires the court to consider the omitted information, it is not clear how this information could have been introduced at the John Doe or preliminary hearings. When Schertz's attorney attempted to question defendants Andraschko and Tomaselli about the scope of their investigation, the state's objection to relevance was sustained on the ground that this line of questioning was an attempt to seek discovery. *See State v. Schertz*, No. 85–CF–84 (Waupaca County Circuit Court August 27 & 28, 1985) (Transcript at 104–14, 208–15).

In the criminal proceedings Schertz, as the defendant, was given the opportunity to offer evidence, but he had no burden of production. However, in connection with the pending summary judgment motions in this civil proceeding the plaintiffs must produce sufficient evidence for a jury to return a verdict in their favor. *See Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Because discovery has been completed, they cannot rely on the hope that further evidence will develop. *See Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C.Cir. 1987).

**19.** As a matter of public policy, a court should hesitate to inject itself or the jury into the role of second-guessing law enforcement officers' investigative techniques, except in highly unusual cases, *see, e.g., Llaguno v. Mingey*, 763 F.2d 1560 (7th Cir.1985) (en banc). *See Gramenos v. Jewel*

*Companies, Inc.*, 797 F.2d 432, 438 (7th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987).

**20.** In addition to their failure to show that the "omissions" were material, the plaintiffs have failed to make a substantial showing (or any showing) that any omissions were made recklessly or intentionally.

**21.** The plaintiffs allege a claim for malicious prosecution, but the Seventh Circuit has ruled that "the common law tort of malicious prosecution does not give rise to a federal constitutional wrong remedied by 42 U.S.C. § 1983." *Friedman v. Village of Skokie*, 763 F.2d 236, 239 (7th Cir.1985). *See also Kompare v. Stein*, 801 F.2d 883, 891 n. 9 (7th Cir.1986); *Tarkowski v. County of Lake*, 775 F.2d 173, 175 (7th Cir.1985).

**22.** Because there is no constitutional right not to be arrested, searched, detained or prosecuted when there is probable cause, the individual defendants are also immune from a suit for damages for these claims. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1358 (7th Cir. 1985) (Posner, J. concurring in part, dissenting in part); *McGaughey v. City of Chicago*, 664 F.Supp. 1131, 1139 (N.D.Ill.1987).

## UNFAIR TRIAL

In addition to the causes of action discussed above, the plaintiffs assert in their First Claim that Michael Schertz's trial was unfair because the defendants leaked false information to the news media and because agent Tomaselli withheld evidence from the prosecution. The plaintiffs have not submitted evidence showing any "false" information which was "leaked" to news media by a particular defendant, so they have not met their burden of showing that a triable issue exists regarding this claim. *See Fullman v. Graddick,* 739 F.2d 553, 559 (11th Cir.1984).

The evidence allegedly withheld by Tomaselli was a page of Schertz's police logbook. In his affidavit Schertz alleges that:

Michael Schertz maintained a logbook wherein he recorded his activities such as arrests and reports of crimes. The logbook was seized by the investigatory team and turned over to Waupaca County District Attorney Thomas Maroney. During the time leading up [sic] the murder trial, Schertz's attorney, Thomas O. Schultz, requested the logbook several times. Upon information and belief, attorney Schultz was told by District Attorney Maroney that he did not know where the logbook was. After the murder trial was over, the logbook was recovered by Schertz.

The logbook contained exculpatory evidence. Specifically, its notations contained information relevant to guns received by him from a private citizen. The investigatory team and prosecution suspected that the guns were stolen by Schertz and then used in the murder of Mork.

Affidavit of Michael Schertz at ¶¶ 13 & 14 (Filed November 4, 1987). Schertz's attorney alleges in his affidavit that, upon information and belief, Schertz has maintained that he received the Hayden guns as a gift. *See* Affidavit of Alvin R. Ugent at ¶ 3 (filed November 4, 1987). This allegation cannot be given any weight because it is made upon information and belief and because it is hearsay. *See Friedel v. City of Madi-*

*son,* 832 F.2d 965, 969–70 (7th Cir.1987). Significantly, Schertz does not make this same statement in his own affidavit.

Whatever the circumstances pertaining to the "leaking" of "false" information and the "concealment" of the logbook page, Schertz cannot prevail on any claims involving these allegations because he has made no showing that the alleged misconduct had any prejudicial effect on his defense. Schertz was acquitted at both trials and the court does not now understand him to be claiming that the outcome of these trials was unjust. Because the plaintiffs have failed to show that Schertz's trials were fundamentally and ultimately unfair, summary judgment will be granted in favor of the defendants on both these claims. *See Hensley v. Carey,* 818 F.2d 646, 648–50 (7th Cir.), *cert. denied sub nom. Hensley v. Stanley,* — U.S. —, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987); *Christman v. Hanrahan,* 500 F.2d 65 (7th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 644 (1974); *Jones v. City of Chicago,* 639 F.Supp. 146, 151 (N.D.Ill.1986).

## ABUSIVE DETENTION

In the Amended Complaint the plaintiffs claim that Schertz was verbally assaulted and abused while in jail as a pretrial detainee. The Waupaca defendants allege that Schertz was never incarcerated in Waupaca County, so there was no personal involvement on their part. *See* Affidavit of Robert Andraschko at ¶ 15 (filed February 2, 1987). The plaintiffs have presented no facts disputing this allegation.

Under the Due Process Clause a pretrial detainee is protected from deliberate exposure to violence. To prevail on such a claim a plaintiff must prove that the defendants acted deliberately or with callous indifference to violate the plaintiff's rights or with reckless disregard for the plaintiff's rights. *See Anderson v. Gutschenritter,* 836 F.2d 346, 349 (7th Cir. 1988). In this case there is no evidence that the defendants were personally involved in any mistreatment Schertz received in jail, let alone that they acted with the necessary mental state. Therefore,

summary judgment will be granted in favor of the defendants on this claim.

## CONSPIRACY

The allegation that the defendants conspired to deprive the plaintiffs of their civil rights is the only cause of action remaining in the First Claim. The plaintiffs believe that the defendants' investigation and other pre-verdict activities were tainted by a conspiratorial purpose to frame Michael Schertz. To establish a prima facie case of a civil conspiracy, a plaintiff must show (1) an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *See Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir.1988). *See also Hampton v. Hanrahan*, 600 F.2d 600, 622–23 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *O'Donnell v. Village of Downers Grove*, 656 F.Supp. 562, 568 (N.D.Ill.1987).

■ In support of their conspiracy claim the plaintiffs have offered only the conclusory allegations of their Amended Complaint and the inadmissible opinion of their expert, Dr. Beckman, who suspects that "personal motivations may have been behind these proceedings against Mr. Schertz." Affidavit of Alvin R. Ugent at ¶ 4 & Exhibit (filed November 20, 1987). To accept this view would require the court to believe that Mork's father and the other defendants were more intent on "framing" Schertz than on finding the actual murderer of Mork.

"Various people engaged in investigating and reporting suspected criminal activity does not amount to conspiracy." *Myers v. Morris*, 810 F.2d 1437, 1454 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Moreover, conclusory and unsupported allegations of conspiratorial purpose are insufficient to create a triable issue as to the participation by any of the defendants in a conspiracy to violate the plaintiffs' civil rights. *See Minority Police Officers Association v. South Bend*, 801 F.2d 964, 967 (7th Cir.1986); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 435–36 (7th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352–53 (7th Cir.1985). A showing of an actual deprivation of a constitutional right is essential.

Because the court has already ruled that the plaintiffs have not demonstrated any redressable denials of their civil rights, it follows that the defendants cannot be liable for conspiracy. Accordingly, summary judgment will be granted in favor of the defendants on the section 1983 conspiracy claim.

## DEFAMATION

In their Third Claim the plaintiffs allege that the defendants "maliciously and intentionally issued statements [23] to the news media and other persons in the community of Waupaca County and in and around the State of Wisconsin claiming that plaintiff Michael Schertz was the murderer of Gerald Mork, that Michael Schertz was a thief of some guns and that Michael Schertz was guilty of misconduct in public office." Amended Complaint at ¶ 36. The plaintiffs claim that the statements were made with malice and for the purpose of eliminating Schertz as the Chief of Police of the Village of Iola. They say that as a result of these statements, Michael Schertz was arrested and incarcerated; that his health was affected; and that he lost his job. The defendants have denied any liability for any of the statements in question.

■ It is not clear whether the plaintiffs are trying to raise a constitutional or common-law claim for defamation. In this section, the court will only consider whether a federal claim is viable. Defamatory statements by state officials that damage an individual's reputation alone are not cognizable under section 1983 as a civil rights violation. *See Paul v. Davis*, 424

---

23. The plaintiffs identified the reported statements at issue in answer to the State Defendants' interrogatories. *See* Answers to First Set of Interrogatories on Behalf of Defendants Tomaselli and Paetzke at Answer to Question 7.

U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, if the stigma occurs in conjunction with the loss of some right or governmental benefit or a change in the plaintiff's legal status, without due process of law, the two things together state a constitutional claim. *See Goulding v. Feinglass*, 811 F.2d 1099, 1102–03 & n. 9 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987); *Bone v. City of Lafayette, Indiana*, 763 F.2d 295, 297–98 (7th Cir.1985).

In this case Schertz was deprived of liberty when he was incarcerated on the murder, theft and misconduct charges and was deprived of a property interest[24] in his job as police chief when he was discharged.

The plaintiffs have only identified agent Tomaselli and Sheriff Mork as having made any of the statements to which they object. *See* Answers to First Set of Interrogatories on Behalf of Defendants Tomaselli and Paetzke at Answer to Question 7. Tomaselli allegedly told a reporter that Schertz had admitted "confiscating" the Hayden guns; while Schertz claims that the guns were "given" to him. The plaintiffs also say that Sheriff Mork told a newspaper that he was "confident that Schertz would be convicted of Gerald Mork's death."

█ Assuming, only for the sake of argument, that these statements were defamatory, the record clearly shows that Schertz was not deprived of liberty or of his employment without due process. As explained above, the John Doe and preliminary hearings provided Schertz with notice and an opportunity to be heard prior to the determinations of probable cause for his arrest and detention.

Similarly, before Schertz was removed as Police Chief of the Village of Iola, he was afforded an opportunity to refute the charges and clear his name at a disciplinary proceeding where he was represented by counsel and allowed to testify, cross examine, and present witnesses and evidence. *See In re Michael D. Schertz* (Village of Iola) (Findings of Fact and Conclusions of Law, Evidentiary Hearing). Following that proceeding, the hearing examiner found by a preponderance of the evidence that Schertz had committed theft of seized property. On this basis he recommended that Schertz be removed from office for cause.[25] There is no evidence that any newspaper stories played any part in the hearing examiner's decision.

This record shows that Schertz was not deprived of any right or status without due process of law. Arrest and detention based on probable cause and termination for cause do not impose the requisite stigma to state a section 1983 claim for defamation. *See Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir.1986). Accordingly, summary judgment will be granted in favor of the defendants on the plaintiffs' constitutional defamation claim.

SEARCH AND DEPRIVATION OF PROPERTY

In their Fifth and Sixth Claims the plaintiffs allege that the defendants deprived them of property. The fifth count of the Amended Complaint states that agents Tomaselli and Paetzke searched the Schertz residence on July 24, 1985, without probable cause and damaged furniture and household goods worth $118.00. *See* Amended Complaint at ¶¶ 40–43. The record shows that Michael Schertz signed a form consenting to the search. *See* Answer [of State Defendants] at Exhibit 1. In general, consent bars a Fourth Amendment claim. *See Holdeman v. Consolidated Rail Corporation*, 649 F.Supp. 1188, 1197–98 (N.D.Ind.1986). However, destruction of property that is not reasonably nec-

---

24. Under section 62.13(3) of the Wisconsin Statutes, chiefs of police "hold their offices during good behavior, subject to suspension or removal by the board [of commissioners] for cause."

25. The State Defendants say that the hearing examiner's decision was thereafter challenged in a certiorari action in the Waupaca County Circuit Court. *See State ex rel. Michael Schertz v. Village of Iola*, No. 86–CV–325 (Waupaca County Circuit Court March 10, 1987). On March 10, 1987, the court issued a decision confirming the decision of the hearing examiner and on March 31, 1987, the court entered an order dismissing the writ of certiorari. No appeal was taken from that order. *See* Brief in Support of Second Motion for Summary Judgment at 14.

essary to effectively execute a search may violate the Fourth or Fourteenth Amendments. *See Bergquist v. County of Cochise*, 806 F.2d 1364, 1368–69 (9th Cir. 1986).

█ Both Tomaselli and Paetzke allege that they did not break or damage any household furniture or household goods. *See* Affidavit of Louis Tomaselli at ¶ 7 (filed February 2, 1987); Affidavit of Carl Paetzke at ¶ 13 (filed February 2, 1987). The plaintiffs have not responded by offering any evidence that these defendants did cause destruction of property or that the execution of the search was unreasonable. Therefore, the court must conclude that there has been no Fourth Amendment violation.

█ Even if there was damage to the Schertz property, there is no violation of the Due Process Clause of the Fourteenth Amendment if adequate state post-deprivation remedies are available. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). This holds true whether the damage was caused by negligent or intentional conduct. *See Id.* In Wisconsin, state tort actions are available to redress the type of injury alleged in the plaintiffs' Fifth Claim. Therefore, the court concludes that there has been no Fourteenth Amendment violation and summary judgment will be granted in favor of the defendants on any federal cause of action alleged in the Fifth Claim of the Amended Complaint.

In their Sixth Claim the plaintiffs allege:

That on or about August 3, 1985, the Defendants, Louis Tomaselli and Carl Paetzke searched the Plaintiffs' residence and drained the Plaintiffs' liquid manure pit; put the liquid manure into tanker trucks and hauled it away from the premises. Upon information and belief, the said Defendants gave said liquid manure away to other residents in the Waupaca County area. That Plaintiffs did not give said Defendants permission to take said liquid manure from them and

said taking it constituted a theft under Wisconsin law....

Amended Complaint at ¶ 45.

This search was carried out pursuant to a warrant issued by Judge Kirk in the course of the John Doe proceeding, and the plaintiffs have raised no issue regarding probable cause for this search. If they are trying to raise a federal claim for deprivation of the manure, they have failed. As explained above, deprivations of property by state officials do not violate the Due Process Clause of the Fourteenth Amendment if adequate state post-deprivation remedies are available. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). State tort remedies as well as the procedures for the return of seized property set forth in section 968.20 of the Wisconsin Statutes are available to the Schertzes for this deprivation. Accordingly, summary judgment will be granted to the defendants as to any federal cause of action contained in the plaintiffs' Sixth Claim.

## V. PENDENT STATE CLAIMS

█ The individual defendants are immune from liability for damages resulting from negligent acts undertaken in the performance of discretionary functions. *See Protic v. Castle Company*, 132 Wis.2d 364, 369, 392 N.W.2d 119, 122 (Ct.App.1986). But the court will not consider these claims further because, where, as here, all federal claims are dismissed before trial, the district court should relinquish jurisdiction of any pendent state law claims unless there is some independent basis of federal jurisdiction or unless the statutes of limitation have run on the pendent claims precluding the filing of a separate state lawsuit. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 721–29, 86 S.Ct. 1130, 1136–40, 16 L.Ed.2d 218 (1966); *Duckworth v. Franzen*, 780 F.2d 645, 656–57 (7th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *O'Brien v. Continental Illinois Bank & Trust*, 593 F.2d 54, 65 (7th Cir.1979). In this case there is no independent basis for jurisdiction and the plaintiffs

have failed to raise a limitation problem.[26] Therefore, to the extent that any pendent state claims are still viable, the court will dismiss them without prejudice. *See Huffman v. Anderson*, 118 F.R.D. 97, 98–99 (N.D.Ind.1987).

## ORDER

For the reasons explained above, the court ORDERS that the Second Motion of Waupaca Defendants for Summary Judgment (filed October 15, 1987) IS GRANTED as to all federal claims contained in the plaintiffs' Amended Complaint.

IT IS FURTHER ORDERED that the Second Motion of Defendants Tomaselli and Paetzke for Summary Judgment (filed October 15, 1987) IS GRANTED as to all federal claims contained in the plaintiffs' Amended Complaint.

IT IS FURTHER ORDERED that all pendent state claims contained in the plaintiffs' Amended Complaint ARE DISMISSED without prejudice.

IT IS FURTHER ORDERED that this action IS DISMISSED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment as a separate document under Federal Rule of Civil Procedure 58.

---

**26.** The relevant statutes of limitation have been tolled during the pendency of this action. *See* Wis.Stat. § 893.15.